PAGES 1 – 33

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JACQUELINE SCOTT CORLEY

MICHAEL GONZALES, INDIVIDUALLY    )
AND ON BEHALF OF ALL OTHERS       )
SIMILARLY SITUATED,               )
                                  )
            PLAINTIFF,            )
                                  )
  VS.                             ) NO. 17-CV-02264-JSC
                                  )
UBER TECHNOLOGIES, INC.; UBER USA,)
LLC; RAISER-CA, AND DOES 1-10,    )
INCLUSIVE;                        )
                                  )  SAN FRANCISCO, CALIFORNIA
            DEFENDANTS.           )  THURSDAY
                                  )  AUGUST 31, 2017
_____)


**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**

**RECORDING  9:10 A.M. – 9:48 A.M.**

**APPEARANCES:**

**FOR PLAINTIFF**          ZIMMERMAN REED LLP
                          2381 ROSECRANS AVENUE, SUITE 328
                          MANHATTAN BEACH, CALIFORNIA 90245
                     BY:  **CALEB MARKER, ESQUIRE**

                          AUDET AND PARTNERS
                          711 VAN NESS AVENUE, SUITE 500
                          SAN FRANCISCO, CALIFORNIA 94102
                     BY:  **MARK E. BURTON, JR.**

(FURTHER APPEARANCES ON FOLLOWING PAGE)


*TRANSCRIBED BY:  JOAN MARIE COLUMBINI, CSR #5435, RPR*
*              RETIRED OFFICIAL COURT REPORTER, USDC*

**APPEARANCES (CONTINUED):**

FOR DEFENDANTS          SHOOK, HARDY & BACON, LLP
ONE MONTGOMERY, SUITE 2700
SAN FRANCISCO, CALIFORNIA 94104
BY:  **JOHN K. SHERK, III, ESQUIRE**
     **ELIZABETH A. LEE, ESQUIRE**

SHOOK, HARDY & BACON L.L.P.
1155 F STREET, N.W., SUITE 200
WASHINGTON, D.C. 20004
BY:  **PATRICK L. OOT, JR., ESQUIRE**

```
1    THURSDAY, AUGUST 31, 2017                      9:10 A.M.

2    (TRANSCRIBER'S NOTE: DUE AT TIMES TO COUNSELS' FAILURE TO

3    IDENTIFY THEMSELVES WHEN SPEAKING, CERTAIN SPEAKER

4    ATTRIBUTIONS ARE BASED ON EDUCATED GUESS.)

5                           ---O0o---

6                          PROCEEDINGS

7         THE CLERK:  CALLING CIVIL ACTION C 17-2246, GONZALES

8    VERSUS UBER.

9              COUNSEL, PLEASE COME UP TO THE PODIUM.  PLEASE STATE

10   YOUR APPEARANCE.

11        MR. BURTON:  GOOD MORNING, YOUR HONOR.  MARK BURTON

12   FOR PLAINTIFF.

13        MR. MARKER:  GOOD MORNING, YOUR HONOR.  CALEB MARKER

14   FOR PLAINTIFF.

15        THE COURT:  GOOD MORNING.

16        MR. SHERK:  GOOD MORNING, YOUR HONOR.  JOHN SHERK,

17   SHOOK, HARDY & BACON FOR UBER.

18        THE COURT:  GOOD MORNING.

19        MR. OOT:  GOOD MORNING, YOUR HONOR.  PATRICK OOT FROM

20   SHOOK, HARDY, BACON FOR THE UBER DEFENDANTS.

21        THE COURT:  GOOD MORNING.

22        MS. LEE:  GOOD MORNING, YOUR HONOR.  ELIZABETH LEE,

23   SHOOK, HARDY & BACON FOR DEFENDANT.

24        THE COURT:  GOOD MORNING.

25              OKAY.  SO THIS IS ON FOR A MOTION TO DISMISS, AND MY
```

```
 1    FIRST QUESTION FOR THE PLAINTIFFS IS, IF YOU COULD JUST TELL ME
 2    EXACTLY WHAT IS THE COMMUNICATION THAT WAS INTERCEPTED.
 3          MR. BURTON:  SURE, YOUR HONOR.  FIRST OF ALL,
 4    REMEMBER THE IMPORTANT PART OF THE COMMUNICATION THAT WAS BEING
 5    SENT WAS IN RELATIONSHIP TO THE DRIVER I.D.  OKAY?  SO THE
 6    DRIVER I.D. ALLOWED UBER TO ACTUALLY KNOW WHERE A PARTICULAR
 7    DRIVER WAS FOR LYFT.  AND THEN --
 8          THE COURT:  BUT HOW?  THIS IS WHAT I NEED TO KNOW,
 9    IS -- I'M LOOKING AT YOUR COMPLAINT, BECAUSE YOU ACTUALLY
10    DIDN'T DRAFT A COMPLAINT, YOU JUST COPIED AN ARTICLE AND PUT
11    SOME STATUTES, WHICH IS THE PROBLEM, I THINK, HERE.  THERE'S NO
12    ALLEGATIONS THAT ARE TIED TO THE ELEMENTS OF THE STATUTE
13    BECAUSE YOU JUST QUOTED FROM AN ARTICLE.
14          SO TELL ME WHERE IN THE COMPLAINT YOU IDENTIFY --
15    LIKE, WHAT IS THE COMMUNICATION?  I DON'T KNOW WHERE IT IS.  IS
16    IT FROM THE DRIVER TO LYFT, FROM LYFT TO UBER?  WHAT IS THE
17    COMMUNICATION, FROM TO WHOM, WHERE IS IT HAPPENING, AND WHERE
18    IS IT IN THE COMPLAINT?
19          MR. BURTON:  WELL, THERE'S NO DISTINCTION BETWEEN THE
20    DRIVER AND LYFT.  OKAY?  LYFT IS THE SAME AS THE DRIVER HERE,
21    LYFT IS THE AGENT OF THE DRIVER COMMUNICATING OUT A SIGNAL TO
22    POTENTIAL PASSENGERS FOR THAT DRIVER.
23          THE COURT:  SO THE SIGNAL GOES DIRECTLY FROM THE
24    DRIVER TO THE POTENTIAL PASSENGER?
25          MR. BURTON:  WELL, ESSENTIALLY, YOUR HONOR.  THEY
```

1    MIGHT TRAVEL THROUGH DIFFERENT ROUTES, BUT IT'S STILL COMING

2    FROM THE DRIVER TO THE PASSENGERS.

3              **THE COURT:**  EVENTUALLY?

4         **MR. BURTON:**  ABSOLUTELY.

5              **THE COURT:**  OKAY.  SO WHERE -- WHERE IS THAT, THOUGH?

6         **MR. BURTON:**  IN REAL TIME, THIS ISN'T LIKE --

7              (SIMULTANEOUS COLLOQUY).

8              **THE COURT:**  NEARLY.  NEARLY REAL TIME.

9         **MR. BURTON:**  WELL --

10             **THE COURT:**  WELL, THAT'S WHAT YOU ALLEGE.  THE

11   PROBLEM IS ALL YOU DID WAS TAKE SOMEBODY ELSE'S WORDS AND USE

12   THEM AS YOUR ALLEGATIONS.

13        **MR. BURTON:**  WELL, UNDERSTOOD, YOUR HONOR.  I MEAN,

14   OBVIOUSLY, THAT IS A COVERT OPERATION THAT UBER WAS CONDUCTING.

15   SO WE HAVE A VERY LIMITED UNDERSTANDING OF EXACTLY HOW THEY DID

16   IT.

17             **THE COURT:**  I MEAN, OBVIOUSLY, I ASSUME BEFORE YOU

18   FILED THE LAWSUIT YOU DID SOME INDEPENDENT RESEARCH YOURSELF

19   AND JUST DIDN'T RELY ON THE NEWSPAPER.  SO OBVIOUSLY -- THAT'S

20   WHAT RULE 11 REQUIRES.  RIGHT?  SO OTHERWISE ANYONE COULD FILE

21   THE LAWSUIT.

22             SO -- BUT WHERE IS THE ALLEGATION?  I THINK THAT'S

23   THE FUNDAMENTAL PROBLEM HERE, RIGHT, IS I DON'T EVEN KNOW WHAT

24   THE COMMUNICATION IS.  WHETHER IT'S ALLEGED ON INFORMATION OR

25   BELIEF OR WHATEVER IT IS YOU BELIEVE HAPPENED, JUST POINT ME TO

1   THE PARAGRAPH IN THE COMPLAINT --

2            **MR. BURTON:**  OKAY.

3            **THE COURT:**  -- SO I CAN IDENTIFY THE COMMUNICATION.

4            **MR. BURTON:**  THE COMMUNICATION IS THE DRIVER I.D.

5   WHICH SIMPLY SAID --

6            **THE COURT:**  NO.  THAT'S THE DATA, RIGHT, IS THE

7   DRIVER I.D.

8            **MR. BURTON:**  RIGHT --

9            **THE COURT:**  THE INFORMATION --

10           **MR. BURTON:**  THAT'S STILL A COMMUNICATION AS WELL.

11           **THE COURT:**  WHERE IS IT GOING FROM AND TO WHOM?

12           **MR. BURTON:**  WELL, IT'S TRAVELING IN SEVERAL

13   DIFFERENT DIRECTIONS BETWEEN -- ALL THE WAY FROM THE DRIVER,

14   ALL THE WAY TO POTENTIAL PASSENGERS.

15           **THE COURT:**  OKAY.  AND HOW DOES IT GET THERE?

16           **MR. BURTON:**  WELL, I CAN'T EXACTLY EXPLAIN

17   TECHNOLOGY-WISE HOW THAT OCCURS, BUT THE DATA IS TRAVELING THIS

18   NETWORK, THE LYFT NETWORK, FROM THE DRIVER TO POTENTIAL

19   PASSENGERS, AND THE ENTIRE CONCEPT HERE IS THAT UBER CAME IN

20   AND INTERCEPTED THAT DATA.  THIS WASN'T --

21           **THE COURT:**  WHERE?  AT WHAT POINT DID THE

22   INTERCEPTION OCCUR?

23           **MR. BURTON:**  WELL, IT'S OCCURRING NOT JUST AT ANY ONE

24   GIVEN POINT, YOUR HONOR; IT'S CONSTANT.  IN OTHER WORDS, WE

25   BELIEVE -- WE BELIEVE THAT IT'S OUR -- SEPARATE FROM THE

```
 1   ARTICLES, WE NOW HAVE AN UNDERSTANDING THAT WE BELIEVE THAT

 2   THEY'RE TRACKING THIS DATA EVERY THREE SECONDS AT LEAST.

 3           THE COURT:  IT'S NOT IN THE COMPLAINT.

 4           MR. BURTON:  WELL, I UNDERSTAND THAT, YOUR HONOR.

 5   BUT WE'RE FIGURING THIS OUT BECAUSE --

 6           THE COURT:  THAT'S OKAY.  I MEAN, I WOULD GIVE YOU

 7   LEAVE TO AMEND.

 8           MR. BURTON:  SURE.

 9           THE COURT:  BUT WHAT I'M TRYING TO DO IS FIGURE

10   OUT -- I MEAN, YOU DEFENDED THE COMPLAINT.  YOU COULD HAVE

11   DECIDED TO AMEND IT, AND INSTEAD YOU DEFENDED IT.

12           MR. BURTON:  ABSOLUTELY, BECAUSE I THINK WE HAVE THE

13   ESSENTIALS THAT WE NEED IN ORDER TO COMPLY WITH --

14           THE COURT:  POINT ME TO WHERE.  SEE, THE PROBLEM WHAT

15   I HAVE IS I'M TRYING TO FIGURE OUT -- SO THE STATUTE 2520

16   REQUIRES THERE TO BE AN INTERCEPTION OF THE PLAINTIFF'S

17   COMMUNICATION, RIGHT?

18           MR. BURTON:  RIGHT.

19           THE COURT:  THE PLAINTIFF'S COMMUNICATION.

20           MR. BURTON:  RIGHT.

21           THE COURT:  AND SO I'M JUST TRYING TO FIGURE OUT IN

22   YOUR COMPLAINT WHAT WAS THE PLAINTIFF'S COMMUNICATION?  AND

23   THERE MAY BE -- I DON'T KNOW IF THERE IS, I'LL HEAR FROM THE

24   DEFENSE, OBVIOUSLY -- A DISTINCTION IF IT'S COMMUNICATION FROM

25   LYFT THAT WAS ACTUALLY INTERCEPTED.  LIKE, YOU SAY THEY'RE ALL
```

1    ONE.  I DON'T KNOW.  THEY MIGHT SAY THEY'RE TWO SEPARATE

2    THINGS.  FOR EXAMPLE, IT MAY GO FROM THE DRIVER TO LYFT TO

3    UBER.  THAT MAY HAVE LEGAL SIGNIFICANCE OR NOT.  I DON'T KNOW,

4    BUT I DON'T EVEN KNOW WHERE, YOU KNOW, THE COMMUNICATION WENT.

5            **MR. BURTON:**  WELL, REMEMBER -- WELL, WE'VE ALREADY

6    SAID HERE -- LET ME TRY TO FIND WHERE PRECISELY.

7            BUT, IN OTHER WORDS, WE'VE SAID THE DRIVER IS

8    COMMUNICATING THEIR LOCATION AND THEIR DRIVER I.D. OUT THROUGH

9    THE LYFT APPLICATION.  OKAY?  AND UBER IS ACCEPTING -- IS

10   INTERCEPTING THAT COMMUNICATION OF THEIR I.D. AND THEIR

11   LOCATION AS -- IN REAL TIME AS THEY'RE GOING AROUND DRIVING

12   AROUND.  THEY HAVE ALL THESE INTERCEPTED LOCATIONS GOING ON.

13           SO DRIVER DATA IS GOING OUT --

14           **THE COURT:**  TO?

15           **MR. BURTON:**  TO POTENTIAL PASSENGERS THROUGH THE LYFT

16   SYSTEM.  OKAY?  JUST BECAUSE IT GOES THROUGH LYFT'S

17   COMMUNICATION SYSTEM DOESN'T CHANGE THE FACT THAT IT'S STILL A

18   COMMUNICATION THAT THEY'RE MAKING TO OTHER PEOPLE.  THIS IS

19   IMPORTANT DATA THAT THEY'RE TRYING TO RELAY.

20           **THE COURT:**  LET ME -- WHOEVER IS GOING TO ARGUE, I'D

21   LIKE TO HEAR, BECAUSE IT'S IMPORTANT, IF THEY'RE GOING TO LEAVE

22   TO AMEND, WE UNDERSTAND THIS.

23           WHAT IS YOUR PERCEPTION ON THE INTERACTION?

24           **MR. OOT:**  EXACTLY WHERE YOU'RE GETTING AT, YOUR

25   HONOR, VERY SIMILAR TO THE *FACEBOOK* CASE WE REFERENCED IN OUR

1    PAPERS, THAT THERE ARE TWO DISTINCT COMMUNICATION, AND THERE'S

2    NO INTERCEPTION WITH EITHER OF THOSE COMMUNICATIONS.  SO YOU

3    HAVE THE LYFT DRIVER APP TO THE LYFT SERVERS AND THE LYFT USER

4    APPEARS TO LYFT SERVERS.

5         AND GOING BACK TO PLAINTIFF'S COMPLAINT, YOU CAN GO

6    TO PARAGRAPH 61 WHERE PLAINTIFFS ALLEGE THAT UBER INTERCEPTED

7    ITS ELECTRONIC COMMUNICATIONS.  BUT THEN YOU GO BACK TO THE

8    ARTICLE, ON PAGE 9 IT STATES THAT UBER ALLEGEDLY USED COMMONLY

9    AVAILABLE SOFTWARE TO FOOL LYFT'S SYSTEMS.  SO THOSE ARE TWO

10   DIFFERENT COMMUNICATIONS BY THEIR OWN ALLEGATIONS, AND THERE'S

11   NO INTERCEPTIONS BETWEEN EITHER OF THEM.

12        **THE COURT:**  SEE, THAT'S THE PROBLEM.  I DON'T --

13   THAT -- I DON'T KNOW.  YOU SAY THROUGH THIS SYSTEM -- BUT IN

14   THE *FACEBOOK*, RIGHT, CASE JUDGE DAVILA SAID THERE WAS A

15   DISTINCTION BECAUSE WHEN YOU HIT THE LIGHT AND IT WENT TO

16   *FACEBOOK* AND IT SKIPPED CNN, AND THEY WEREN'T A PARTY TO THE

17   COMMUNICATION ANYMORE, SO THERE WASN'T AN INTERCEPTION.

18        **MR. OOT:**  NO, BUT IN *FACEBOOK*, THEY SAID THEY WERE A

19   PARTY TO COMMUNICATION.

20        **THE COURT:**  THAT FACEBOOK WAS.

21        **MR. OOT:**  RIGHT.

22        **THE COURT:**  RIGHT.

23        **MR. OOT:**  AND THAT'S WHY THEY DIDN'T QUALIFY AS AN

24   INTERCEPTION, THAT THE STATUTE DIDN'T APPLY AT ALL.

25        **THE COURT:**  RIGHT.

1          **MR. OOT:**  FACEBOOK SPECIFICALLY SAID THAT THEY

2     WERE --

3          **THE COURT:**  BUT ARE YOU SAYING THE DRIVER IS ACTUALLY

4     NOT A PARTY TO THE COMMUNICATION BECAUSE THE DRIVER'S

5     COMMUNICATION GOES TO LYFT?

6          **MR. OOT:**  NO, YOUR HONOR.  AND, ACTUALLY, WE MADE A

7     QUICK DEMONSTRATIVE THAT I PASSED UP AS SLIDES.  I'M HAPPY TO

8     USE IT OR HAPPY TO SKIP IT, BUT IT MIGHT HELP DESCRIBE WHAT

9     WE'RE TALKING ABOUT HERE.  BUT IF YOU TURN TO PAGE 3, THAT HAS

10    THE TWO DIFFERENT SLIDES.

11          **THE COURT:**  YOU CAN PUT IT UP BECAUSE WE HAVE GUESTS.

12          **MR. OOT:**  WE COULDN'T --

13          **THE COURT:**  OH, IT'S NOT WORKING.  OKAY.

14          **MR. OOT:**  BUT, ESSENTIALLY, YOU KNOW, WHAT WE HAVE

15    ABOVE IS THE VERY TRANSACTION THAT YOU WERE TALKING ABOUT

16    EARLIER WITH THE *FACEBOOK* CASE WHERE THERE ARE TWO DISTINCT

17    LINES OF COMMUNICATION BACK TO THE USER.

18          HERE WHAT WE HAVE IS TWO DISTINCT LINES OF

19    COMMUNICATION, AGAIN, BETWEEN THE USER APP AND LYFT AND THE

20    DRIVER APP AND LYFT, AND THERE'S NO INTERCEPTION BETWEEN EITHER

21    OF THEM BECAUSE THE DRIVER IS THE PARTY WITH THE COMMUNICATION

22    WITH THE LYFT SERVERS, AND THE LYFT APP IS THE COMMUNICATION

23    BETWEEN LYFT AND THE LYFT SERVERS.

24          **THE COURT:**  SO YOU'RE THINKING THE DRIVER ACTUALLY

25    NEVER COMMUNICATES DIRECTLY WITH THE PASSENGER, EVERYTHING GOES

1   THROUGH LYFT.

2           **MR. OOT:**  EVERYTHING GOES THROUGH LYFT, YES, YOUR

3   HONOR.

4           **MR. BURTON:**  THAT'S A DISTINCTION WITHOUT A

5   DIFFERENCE, YOUR HONOR.  IF I AM USING GMAIL TO SEND MY

6   COMMUNICATION AND -- OUT TO SOMEBODY ELSE AND THEY ACCEPT --

7   THEY GRAB MY COMMUNICATION AS IT'S GOING FROM THE GMAIL SERVER

8   THROUGH TO MY INTENDED RECIPIENT, THEY STILL INTERCEPTED MY

9   COMMUNICATION THAT I'VE INTENDED FOR THE EVENTUAL RECIPIENT.

10          **THE COURT:**  WHAT CASE IS THAT?

11          **MR. BURTON:**  WELL, I DON'T THINK THERE'S A CASE THAT

12  DOESN'T SAY IT.  IN OTHER WORDS, MY PHONE CALL MIGHT GET

13  ROUTED -- I PICK UP THE PHONE.  I CALL YOU.  THAT MIGHT GET

14  ROUTED THROUGH AT&T'S LINK SOMEWHERE, AND THEN IT GOES OUT TO

15  MY INTENDED PERSON THAT I'M TALKING TO ON THE PHONE.  BECAUSE

16  THEY TAP INTO THAT BETWEEN AT&T'S COMMUNICATION CENTER AND THE

17  PERSON THAT I'M TALKING TO DOESN'T CHANGE THE FACT THAT THEY'RE

18  INTERCEPTING MY --

19          **THE COURT:**  WHAT ABOUT THAT?  I THOUGHT ABOUT THAT.

20  IN FACT, MOST PEOPLE NOW HAVE INTERNET PHONES, SO IT ALL GOES

21  THROUGH SERVERS; I DON'T KNOW WHY GOING THROUGH A SERVER MAKES

22  IT DIFFERENT.

23          **MR. OOT:**  YES, YOUR HONOR.  AND PLAINTIFFS HAVE CITED

24  THOSE ELECTRONIC COMMUNICATION PROVIDER CASES WHERE THERE WAS

25  AN ACTUAL INTERCEPTION IN BETWEEN THE TWO COMMUNICATIONS.  SO,

1  FOR EXAMPLE, THE *CAMPBELL* CASE WHERE FACEBOOK WAS ACCESSING THE

2  FACEBOOK MESSAGES BETWEEN USERS FOR ADVERTISING PURPOSES.

3          SO THAT WOULD BE THE COMMUNICATIONS PROVIDER

4  ACCESSING, AGAIN, IN THE MIDDLE WHERE THEY SHOULDN'T BE.

5  BECAUSE WE HAVE THESE TWO DIFFERENT DISTINCT LINES OF

6  COMMUNICATION, THERE'S NO INTERCEPTION.

7          SO I THINK WHAT PLAINTIFF IS TRYING TO SAY IS, WELL,

8  THESE INTERNET SERVICE PROVIDER CASES OR THESE ELECTRONIC

9  COMMUNICATION PROVIDER CASES WHERE THERE ACTUALLY IS

10  INTERCEPTION HAPPENING HERE, BUT THERE'S NOT BECAUSE OF THE TWO

11  DISTINCT LINES JUST LIKE THE *FACEBOOK* CASE THAT WE CITED IN OUR

12  PAPERS.

13          **THE COURT:**  WELL, THERE -- FACEBOOK IS NOT EXACTLY ON

14  POINT, BECAUSE THERE WASN'T -- IT WAS THAT THE USER WAS

15  COMMUNICATING DIRECTLY WITH FACEBOOK, AND IT WAS BYPASSING -- I

16  GUESS IT WAS CNN IN THAT CASE, THE WEBPAGE, RIGHT?

17          **MR. OOT:**  SO IN THE FACEBOOK CASE, IT WAS -- THE GET

18  COMMAND WENT OUT TO -- FIRST TO CNN AND THEN CAME BACK TO THE

19  USER, AND THEN SUBSEQUENT COMMUNICATION WENT TO -- FROM THE

20  USER TO THE --

21          **THE COURT:**  DIRECTLY TO FACEBOOK.

22          **MR. OOT:**  DIRECTLY TO FACEBOOK.

23          **THE COURT:**  NOT THROUGH CNN.

24          **MR. OOT:**  NOT THROUGH CNN, BUT VERY SIMILAR TO WHAT

25  HAPPENS HERE.

1              SO WE HAVE A USER APP WHERE THE USER APP COMMUNICATES

2     TO LYFT SERVERS THAT:  LET ME SEE WHAT'S OUT THERE, WHAT'S

3     AVAILABLE, WHAT'S THE BROADCAST INFORMATION.  AND THEN YOU HAVE

4     THE SEPARATE COMMUNICATION WITH THE DRIVER THAT CONTAINS THAT

5     LYFT I.D. AND PUBLICLY BROADCAST INFORMATION.

6              **THE COURT:**  ALL RIGHT.  WELL, WE ACTUALLY DON'T KNOW,

7     BECAUSE NONE OF THAT IS IN THE COMPLAINT.

8              **MR. BURTON:**  WELL, I DON'T THINK THAT MUCH DETAIL

9     NEEDS TO BE IN THE COMPLAINT, YOUR HONOR.  WE'VE SAID THAT THEY

10    ARE SENDING THESE COMMUNICATIONS OUT TO -- NOT ONLY TO LYFT BUT

11    USING THE LYFT SYSTEM.  WE SAID THEY SET UP THESE FALSE SITES,

12    FALSELY SET UP FALSE --

13             **THE COURT:**  BUT THAT'S NOT WIRETAP ACT.  RIGHT?  YOU

14    DON'T HAVE TO DO IT THAT WAY.  I UNDERSTAND YOU WANT TO SAY THE

15    SCHEME IS WRONG AND BAD.  I GET THAT.  THAT'S OKAY.  AND IF

16    LYFT WAS SITTING HERE, IT WOULD PROBABLY BE AN EASY CASE.  IT

17    WOULD BE A LOT OF DIFFERENT STATUTES THEY COULD BRING UP UNDER,

18    RIGHT, UNFAIR COMPETITION BECAUSE IT VIOLATED LYFT, BUT LYFT'S

19    NOT HERE.  THIS IS DRIVER --

20             **MR. BURTON:**  YOU HAVE TO REMEMBER LYFT IS ACTING AS

21    THE AGENT OF THE DRIVERS.  SO THERE'S NOT REALLY A HUGE

22    DISTINCTION BETWEEN THE DRIVERS AND LYFT IN THIS PARTICULAR

23    CIRCUMSTANCE AS FAR AS THE INTERCEPTION OF THE DATA IS

24    CONCERNED.

25             **THE COURT:**  ALL RIGHT.  WELL, I DON'T KNOW ABOUT

1  THAT.  I GUESS -- BUT WHAT YOU JUST SAID, WHERE IN THE

2  COMPLAINT -- JUST TELL ME WHERE IN THE COMPLAINT --

3         **MR. BURTON:**  WELL, I'M TRYING TO POINT TO PARAGRAPH

4  75 AND SOME OF THESE DIFFERENT PLACES WHERE WE'RE DESCRIBING

5  THE DRIVER IDENTIFICATION AND PRICING INFORMATION BEING

6  INTERCEPTED AS IT'S SENT OUT, INTERCEPTING

7  PRIVATE COMMUNICATIONS --

8         **THE COURT:**  BUT YOU DID -- THAT'S JUST A CONCLUSION.

9  THAT'S NOT TELLING ME WHERE THEY INTERCEPTED IT OR HOW THEY

10 INTERCEPTED IT, JUST THAT THEY INTERCEPTED IT.

11        SO LET'S GO TO -- I MEAN, YOU'RE GOING TO HAVE TO

12 AMEND THE COMPLAINT.  YOU ACTUALLY NEED TO DRAFT A COMPLAINT

13 WITH ALLEGATIONS AND NOT JUST QUOTE FROM SOMEBODY'S ARTICLE.

14 ALL RIGHT?  YOU'RE GOING TO HAVE TO DO THAT WORK.

15        BUT LET'S TALK ABOUT CONTENT, THOUGH, AND YOUR

16 ARGUMENT WAS, WHICH HAS SOME APPEAL, IS THAT -- BECAUSE YOU

17 AGREE UNDER THE LAW THAT I.D., RIGHT, ISN'T CONTENT, OR DO YOU

18 AGREE?

19        **MR. BURTON:**  NO.  I MEAN, I BELIEVE THE I.D. IS

20 CONTENT ITSELF.

21        **THE COURT:**  AND WHAT CASE SAYS THAT?

22        **MR. BURTON:**  WELL, OBVIOUSLY, WE DON'T HAVE A CASE

23 THAT IS CONSIDERED THIS EXACT --

24        **THE COURT:**  NO, I UNDERSTAND, BUT THE CASE LAW SAYS

25 THAT THE INFORMATION THAT GOES ALONG WITH THE COMMUNICATION,

1  THE IDENTIFYING, THE PHONE NUMBER AND THOSE KIND OF THINGS, ARE

2  NOT CONTENT.  AND SO I WOULD THINK THAT THE DRIVER I.D. MIGHT

3  BE SOMETHING LIKE THAT.  I DON'T KNOW.  SO THAT'S WHY I'M

4  WONDERING WHAT CASE YOU'RE RELYING ON TO SAY THAT IT FITS INTO

5  THE CONTENT SIDE AS OPPOSED TO THE IDENTIFYING SIDE.

6      **MR. BURTON:**  SURE.  WELL, THE -- THIS ISN'T JUST

7  IDENTIFIED -- OBVIOUSLY, THERE'S A CELLPHONE NUMBER, IF YOU

8  WILL, OR OTHER INFORMATION THAT'S TRACKED REGARDING THIS.  BUT

9  THE I.D. ITSELF IS A PARTICULAR COMMUNICATION THAT ALLOWS THIS

10  IMPORTANT INFORMATION ABOUT WHERE THE DRIVER IS LOCATED TO BE

11  COMMUNICATED.  AND THAT'S PART OF THE COMMUNICATION, IS THAT

12  YOU'RE SAYING NOT ONLY IS THIS MY UNIQUE I.D. -- WHICH CAN

13  CHANGE OVER TIME AS WELL.  SO THIS ISN'T JUST SOME -- THIS IS

14  PART OF THE -- NECESSARY PART OF THE COMMUNICATION ORDER FOR

15  THEM TO SEND A MESSAGE BETWEEN TWO POINTS, AND IT'S IRRELEVANT

16  DATA THAT DOESN'T COMMUNICATE ANYTHING.  IT COMMUNICATES VERY

17  IMPORTANT INFORMATION ABOUT LOCATION.

18      **THE COURT:**  THE LOCATION INFORMATION ITSELF IS NOT

19  CONTENT, RIGHT?  THE CASE LAW IS PRETTY SPECIFIC ABOUT THAT.

20      **MR. BURTON:**  WELL, I THINK THAT ONCE YOU -- IN THIS

21  PARTICULAR CIRCUMSTANCE, THE FACT THAT THEY CAN DERIVE

22  INFORMATION FROM THAT COMMUNICATION, THEY CAN -- THEY CAN -- ON

23  THE GPS THEY CAN SEE, OH, WHERE YOU ARE, WHERE YOU DRIVE, WHERE

24  THE DRIVERS ARE CONCENTRATED, THE LOCATIONS THAT THEY ACTUALLY

25  PICK UP PASSENGERS.

```
1              THE COURT:  YES, YES.

2              MR. BURTON:  WHERE THEY START --

3              THE COURT:  YES.

4              MR. BURTON:  -- THEIR DAY POTENTIALLY.  THAT DOES

5    COMMUNICATE INFORMATION.

6              (SIMULTANEOUS COLLOQUY.)

7              THE COURT:  OKAY, BUT LET ME ASK YOU SOMETHING

8    BECAUSE I MIGHT HAVE AN INSIGHT INTO.  THAT'S ALL GPS LOCATION

9    INFORMATION, AND LAW ENFORCEMENT SEEKS THAT INFORMATION IN

10   COURTS.  WE ISSUE SEARCH WARRANTS FOR IT BASED ON PROBABLE

11   CAUSE.  WE DO NOT REQUIRE IT TO GO THROUGH THE WIRETAP STATUTE.

12   WE DO NOT.  WE DO NOT.

13             MR. BURTON:  OKAY.

14             THE COURT:  SO THAT WOULD -- IF I WERE TO RULE THAT

15   JUST COMMUNICATING LOCATION INFORMATION IS CONTACT THAT FALLS

16   WITHIN THE WIRETAP STATUTE, I'M TELLING YOU THE WAY EVERY COURT

17   IN THE UNITED STATES OPERATES, IN TERMS OF SEARCH WARRANTS,

18   WOULD HAVE TO CHANGE BECAUSE NO COURT HAS HELD THAT THAT FALLS

19   WITHIN THE WIRETAP STATUTE.

20             SO I'M JUST -- I'M TELLING YOU THERE'S A LINE HERE

21   THAT I'M AWARE OF, WHICH IS THE IMPLICATIONS TO THE ARGUMENT

22   THAT GO BEYOND.  IT'S NOT SIMPLE -- WE DON'T ACTUALLY JUST HAVE

23   A CIVIL STATUTE.  IT'S ACTUALLY IN THE CRIMINAL CODE, THE

24   WIRETAP STATUTE.

25             MR. BURTON:  I UNDERSTAND.
```

1          **THE COURT:**  SO THAT APPLIES.  THAT'S CERTAINLY NOT

2     THE UNDERSTANDING AT ALL.  I SEE WHAT YOU'RE SAYING, BUT

3     THERE'S LOTS OF IDENTIFYING INFORMATION THAT COMMUNICATES

4     VALUABLE INFORMATION OF WHICH CAN BE SUBSTANTIVE.  BUT THAT'S

5     NOT WHAT THE WIRETAP STATUTE SAYS, AND WHEN IT WAS PASSED IT

6     WAS TALKING ABOUT CONTENT, REALLY, WORDS, RIGHT, INTERCEPTING.

7          **MR. BURTON:**  RIGHT, WELL, ELECTRONICALLY EVERYTHING

8     ISN'T ACTUAL WORDS.  IT MIGHT BE CONVERTED TO WORDS EVENTUALLY,

9     BUT I THINK IT'S BROAD ENOUGH -- OBVIOUSLY, IT WASN'T MEANT

10    JUST TO COMMUNICATE SPOKEN WORDS, WE'VE ALL AGREED ABOUT THAT.

11         **THE COURT:**  AN EMOJI, I THINK -- WOULDN'T YOU AGREE

12    IF THEY INTERCEPTED YOUR EMOJI THAT WOULD BE CONTENT?

13         **MR. OOT:**  I WOULD AGREE, YOUR HONOR, THAT PARTICULAR

14    COMMUNICATION MIGHT BE CONTENT.

15         **THE COURT:**  ALL RIGHT.

16         **MR. BURTON:**  WELL, THIS IS LOT MORE COMMUNICATIVE

17    THAN AN EMOJI.  YOU KNOW, THESE SPECIFIC I.D. NUMBERS THAT WERE

18    HIDDEN THAT ALLOWED, YOU KNOW, THIS VERY SPECIFIC DATA -- I

19    MEAN, YOU GOT TO REMEMBER, THE INTENT OF THE STATUE HERE IS TO

20    PREVENT EXACTLY WHAT OCCURRED HERE.  CORPORATE ESPIONAGE IS

21    SOMETHING THAT --

22         **THE COURT:**  I'M GOING TO STOP YOU FOR A SECOND.  THE

23    INTENT OF THE STATUTE IS TO PROHIBIT THE INTERCEPTION OF

24    PRIVATE COMMUNICATIONS --

25         **MR. BURTON:**  RIGHT.

1          **THE COURT:**  -- AND THE CONTENT OF THEM.  BUT THERE'S

2    A DATA AND INFORMATION THAT'S OUT THERE THAT'S PUBLICLY

3    ACCESSIBLE, AND IT'S NOT.

4          WHAT THIS CASE IS, REALLY WHAT IT IS, IS THE LINE

5    BETWEEN THAT, AND THAT WILL GET PROBABLY WHETHER IT'S PUBLICLY

6    ACCESSIBLE OR NOT, RIGHT, AND IT'S SOMEWHERE ON THE LINE.

7    WE'RE GOING TO HAVE TO DECIDE WHERE IT FALLS ON THE LINE.

8          CERTAINLY, IF THEY WERE INTERCEPTING THE PHONE CALLS

9    OR THE TEXTS BETWEEN THE DRIVERS AND LYFT OR THE PASSENGERS,

10   WE'D HAVE NO DISPUTE.

11         THIS IS SOMEWHERE DIFFERENT.  THIS IS AUTOMATIC

12   INFORMATION AND DATA THAT'S BEING CONVEYED ONCE THE DRIVER HAS

13   THE APP ON.  THAT'S WHAT'S BEING INTERCEPTED, RIGHT?

14         **MR. BURTON:**  WELL, THAT IN PART IS TRUE, BUT JUST

15   BECAUSE IT'S AN AUTOMATIC COMMUNICATION THE PARTIES HAVE SET UP

16   DOESN'T MAKE IT ANY LESS OF A COMMUNICATION.

17         **THE COURT:**  TRUE.  BUT THE -- THE TERM THAT WE'RE

18   DISCUSSING HERE IS CONTENT, IS IT THE CONTENT OF THE

19   COMMUNICATION, OR IS IT MERELY DATA ABOUT THE COMMUNICATION,

20   BECAUSE THE WIRETAP ACT PROHIBITS THE INTERCEPTION OF THE

21   CONTENT BUT NOT THE DATA ABOUT THE COMMUNICATION.

22         **MR. BURTON:**  RIGHT.  BUT THE IDEA OF THE DRIVER IS

23   NOT MERELY -- THE DATA ABOUT THE COMMUNICATION IS USUALLY

24   PRODUCED FOR THE NEEDS OF COMMUNICATING THE DATA.  IN OTHER

25   WORDS, THERE ARE CERTAIN DATA THAT GETS GENERATED

1    AUTOMATICALLY, NOT BY THE PARTIES ALL THEMSELVES, BUT USUALLY

2    BY A THIRD-PARTY PROVIDER.  IT MIGHT BE THE ACTUAL CELLULAR

3    CARRIER, FOR INSTANCE, BETWEEN DRIVER AND LYFT OR ONE OF THE

4    OTHER PARTIES.  AND THAT DATA REGARDING THAT COMMUNICATION IS

5    COMPLETELY SEPARATE FROM WHAT IS BEING CONVEYED FROM THE DRIVER

6    THROUGH THE LYFT SYSTEM.

7              **THE COURT:**  HOW IS A DRIVER'S I.D. DATA OR I.D.

8    NUMBER ANY DIFFERENT FROM A DRIVER'S NAME?

9              **MR. BURTON:**  HOW IS IT DIFFERENT FROM A NAME?

10             **THE COURT:**  IT'S NOT, RIGHT?  IT'S ANOTHER WAY OF

11   IDENTIFYING A PERSON BY NAME.  CORRECT ME IF I'M WRONG, DON'T

12   THE CASES SAY THAT THE NAME OF THE PERSON TO COMMUNICATION IS

13   NOT CONTENT.

14             **MR. OOT:**  CORRECT, YOUR HONOR.  IT'S ACTUALLY NAME,

15   ADDRESS, IDENTITY OF THE PERSON MAKING THE COMMUNICATION.

16   THAT'S THE FACEBOOK INTERNET TRACKING CASE CITING *ZYNGA*, ALL

17   SAY THAT'S NOT THE CONTENT OF THE STATUTE.

18             **MR. BURTON:**  BECAUSE THIS IS -- IT MIGHT BE

19   IDENTIFYING YOURSELF AS THE NAME, BUT IT'S OBVIOUSLY NOT YOUR

20   NAME, AND IT'S OBVIOUSLY NOT BEING USED MERELY TO IDENTIFY

21   YOURSELF.  THE ENTIRE POINT OF THAT COMMUNICATION IS TO

22   COMMUNICATE YOUR LOCATION.  OKAY?

23             SO WHILE YOU MIGHT BE ABLE TO IDENTIFY A SPECIFIC

24   DRIVER EVENTUALLY THROUGH THE USE OF THAT DATA, THERE'S A LOT

25   OF -- YOU KNOW, INFORMATION THAT PEOPLE CAN COMMUNICATE THAT

 1   CAN IDENTIFY YOU.

 2            BUT -- SO, FOR INSTANCE, IF I SEND MY SOCIAL SECURITY

 3   NUMBER THROUGH AN EMAIL, SOMEBODY INTERCEPTS IT, AND THEY GET

 4   THAT COMMUNICATION, THEY MIGHT BE ABLE TO IDENTIFY MY NAME

 5   SOMEHOW, BUT STILL THEY INTERCEPTED MY COMMUNICATION, THAT

 6   SPECIFIC INFORMATION.  AND IT WASN'T THE INTENT OF THE DRIVERS

 7   TO SEND THE -- OR OF ANY OF THIS COMMUNICATION TO IDENTIFY THE

 8   PERSON'S NAME.

 9            IN OTHER WORDS, WHEN THE INFORMATION IS SENT, THEY'RE

10   NOT DOING IT SO THAT THEY KNOW WHO IT IS OR SO THAT YOU KNOW

11   WHO SENT THE COMMUNICATION.  YOU'RE DOING IT TO CONVEY

12   INFORMATION ABOUT YOUR LOCATION THROUGH THE SPECIFIC CODES.

13   NOW THAT'S CONTENT AS OPPOSED TO, OH, THIS IS COMING FROM THIS

14   PARTICULAR DRIVER.

15            **THE COURT:**  ALL RIGHT.  SO THE PLAINTIFF'S POSITION

16   IS THAT THE I.D. DRIVER NUMBER IS THE CONTENT THAT'S BEING

17   CONVEYED?

18            **MR. BURTON:**  ABSOLUTELY, YOUR HONOR.

19            **THE COURT:**  IS THERE ANYTHING ELSE?

20            **MR. BURTON:**  WELL, WE'RE ALSO SAYING THAT YOU CAN

21   IDENTIFY A LOT MORE ABOUT THE -- WHAT'S BEING COMMUNICATED

22   BASED UPON THAT DATA.  IN OTHER WORDS, IF I USE A CODE TO SAY

23   THIS IS MY LOCATION, OR THIS IS WHAT I AM DOING RIGHT NOW, BUT

24   I'M USING A SHORTHAND OF SOME SORT, WHICH THIS ESSENTIALLY IS,

25   THEN I'M COMMUNICATING INFORMATION THAT GOES -- THAT CAN BE

1    DERIVED BROADER THAN JUST THE MERE NUMBERS THEMSELVES.

2            **THE COURT:**  HOW IS THAT ANY DIFFERENT FROM A GPS

3    TRACKER?  RIGHT?  SO IF LAW ENFORCEMENT TRACKS THE GPS LOCATION

4    FROM MY CELLPHONE, IT'S GETTING ALL THE SAME DATA.  IT KNOWS

5    EXACTLY WHERE I'M GOING, HOW LONG I'VE BEEN THERE, WHAT I'VE

6    DONE.

7            **MR. BURTON:**  RIGHT, BUT THIS ISN'T A GPS TRACKER.

8    ONE OF THE THINGS YOU MIGHT BE ABLE TO DERIVE FROM THE

9    INFORMATION IS LOCATION, BUT THAT'S IRRELEVANT TO WHETHER OR

10   NOT THIS IS AN ACTUAL GPS TRACKER.

11           **THE COURT:**  I UNDERSTAND THAT.  I'M TALKING ABOUT

12   CONTENT, BECAUSE WE KNOW FROM THE CASE LAW THAT YOUR GPS

13   LOCATION IS NOT CONTENT.  THAT'S WHAT THE CASE LAW HOLDS, AND

14   I'M TRYING TO FIGURE OUT HOW YOUR ARGUMENT IS ANY DIFFERENT

15   FROM THAT.

16           **MR. BURTON:**  BECAUSE THIS IS CONTENT THAT ALLOWS YOU

17   TO DETERMINE THE GPS LOCATION.  THE GPS LOCATION MIGHT NOT BE

18   CONTENT IF YOU'RE SENDING IT OUT, BUT IF YOU'RE SENDING

19   INFORMATION THAT ALLOWS YOU TO GO AND DETERMINE THE LOCATION,

20   THEN THAT IS CONTENT THAT YOU'VE SENT OUT.  JUST BECAUSE YOU

21   END UP AT A PLACE THAT WASN'T CONTENT DOESN'T MEAN THAT WHAT

22   TRANSPIRED IN ORDER TO DETERMINE THAT WASN'T CONTENT.  IF I

23   SEND AN EMAIL OR A TEXT SAYING I'M AT THE FEDERAL COURTHOUSE

24   RIGHT NOW, YOU GO, OH, WELL, I KNOW WHERE THAT IS, AND I CAN

25   DETERMINE THE GPS COORDINATES BASED UPON YOUR DESCRIPTION OF

1    WHERE YOU ARE.  OKAY?  THEY STILL INTERCEPTED MY CONTENT EVEN

2    THOUGH THEY'VE NOW TRANSLATED THAT INTO WHERE I AM AND MIGHT

3    DETERMINE GPS-WISE MY EXACT LOCATION, BUT I STILL COMMUNICATED

4    CONTENT FOR THEM TO FIGURE OUT WHERE I AM.

5              **THE COURT:**  ALL RIGHT.

6              **MR. OOT:**  SO, YOUR HONOR, LET ME GIVE YOU AN ANALOGY.

7              IF I PUT MY NAME OR WHATEVER IN THE OLD-FASHIONED

8    PHONE BOOK AND SOMEBODY PICKS UP THE PHONE AND CALLS ME, I

9    CAN'T LATER SAY THAT THAT NON-CONTENT INFORMATION IS PRIVATE.

10             SO, THE CASE LAW IS ON POINT WITH THAT THIS

11   LOCATION -- ANONYMOUS GEO LOCATION INFORMATION AND ANONYMOUS

12   USER I.D. ARE NOT CONTENT.  I THINK IT'S DIFFICULT TO CONTEST

13   THAT.

14             ANOTHER WAY TO THINK ABOUT THIS, YOUR HONOR, BACK

15   WHEN I WAS AT THE SECURITIES & EXCHANGE COMMISSION, AND I HAD

16   TO DO TRAINING FOR ENFORCEMENT OF WHAT'S CONTENT OR NOT CONTENT

17   UNDER 2703, SO WHAT THE AGENCY COULD GET WITHOUT A WARRANT AND

18   WHAT THEY ACTUALLY NEEDED TO GO TO DOJ FOR A WARRANT FOR.

19             THERE WE FOUND AN ARTICLE BY PROFESSOR WARREN KERR,

20   AND HE MADE UP A VERY GOOD ANALOGY WHERE HE TALKED ABOUT PLAIN

21   OLD-FASHIONED POSTAL MAIL.  SO THINGS THAT GO OUTSIDE THE

22   ENVELOPE, LIKE NAME, ADDRESS, AND RETURN ADDRESS EVEN, THAT

23   WOULD BE NON-CONTENT INFORMATION, BUT THE EMOJIS OR THE LETTER

24   TO YOUR MOTHER OR BROTHER, THE THINGS THAT GO INSIDE THE

25   ENVELOPE, THOSE WOULD ACTUALLY BE PROTECTED COMMUNICATIONS.

1          BUT SO HERE WE'RE STILL TALKING ABOUT ANONYMOUS GEO

2     LOCATION INFORMATION, ANONYMOUS USER I.D., AND PLAINTIFFS

3     ALLEGING THINGS THAT AREN'T IN THE COMPLAINT THAT UBER COULD DO

4     ANOTHER STEP OR ANOTHER TWO STEPS TO TRY TO POTENTIALLY FIGURE

5     OUT WHERE THIS PERSON MIGHT BE OR WHO THIS PERSON MIGHT BE.

6          **THE COURT:**  WELL, I KNOW -- IT'S NOT IN THE

7     COMPLAINT, AND I'LL GIVE THEM LEAVE TO AMEND THE COMPLAINT.  I

8     THINK IT'S GOOD TO FLESH IT OUT WHEN WE DO HAVE ALLEGATIONS OF

9     THE COMPLAINT, THEN WE CAN HAVE A ROBUST ARGUMENT BASED ON THE

10    ALLEGATIONS OF THE COMPLAINT.  SO I UNDERSTAND.  NONE OF THAT'S

11    IN THE COMPLAINT.

12         ALL RIGHT.  WELL, I THINK THAT'S AN ISSUE, IT'S GOING

13    TO BE -- THE CONTENT IS GOING TO BE A HURDLE HERE AND YOU'RE

14    GOING TO HAVE TO SHOW SOMETHING, RIGHT?

15         **MR. BURTON:**  I UNDERSTAND, YOUR HONOR.  I'D JUST LIKE

16    TO POINT OUT AS FAR AS THE STATE CAUSE OF ACTION IS CONCERNED,

17    THOUGH, I DON'T THINK THERE'S ANY ISSUE THERE.  I DON'T THINK

18    THAT THAT -- THEY HAVEN'T REALLY ATTACKED IT BY SOMEHOW SAYING

19    THAT IF WE CALL UNDER THE WIRETAP ACT SOMEHOW THE STATE CAUSE

20    OF ACTION ABOUT USING A DEVICE TO TRACK PEOPLE SOMEHOW --

21         **THE COURT:**  YOU MEAN THE --

22         **MR. BURTON:**  -- FAILS AT THE EXACT SAME TIME.

23         **THE COURT:**  YOU MEAN A CIPA CLAIM?

24         **MR. BURTON:**  YEAH.

25         **THE COURT:**  OKAY.  WHAT ABOUT THAT?

1           **MR. OOT:**  THE CIPA ACT CLAIM FAILS, TOO, YOUR HONOR.

2           PLAINTIFF SITES TWO CASES WHERE THERE'S AN

3    INTERCEPTION WITH CALL CENTERS OF A VOICE PHONE CALL; ONE WAS

4    RECORDED, ONE WAS A SUPERVISOR OVERSEEING THE CALL OF A CALL

5    CENTER EMPLOYEE WITH A CUSTOMER DISCUSSING FINANCIAL

6    INFORMATION.  THERE THE CONTENTS OF THE COMMUNICATION OR THE

7    FINANCIAL DISCUSSION, THAT WAS THE -- *KIGHT V. CASHCALL* CASE.

8    THAT WAS PROTECTED CONTENT.  AND THAT'S WHERE THE COURT MOVED

9    BEYOND THE MOTION TO DISMISS BECAUSE THEY WEREN'T -- THEY WERE

10   DISCUSSING CONTENT, FINANCIAL INFORMATION OR CONFIDENTIAL

11   COMMUNICATIONS UNDER THE CIPA STATUTE.

12          THE *FAULKNER* CASE, ANOTHER CASE THAT THEY REFERENCED,

13   WHERE THEY'RE ALLEGING THE VOICE RECORDINGS OF THE CALL CENTER,

14   THERE, THE COURT RULED THAT THERE WAS A FAILED CLAIM UNDER 632,

15   AND VERY SIMILAR TO WHAT WE HAVE HERE, JUST BALD ALLEGATIONS OF

16   RECITALS OF THE STATUTE.

17          SO WHAT WE'RE TALKING ABOUT HERE WITH, AGAIN,

18   ANONYMOUS GEO LOCATION INFORMATION, ANONYMOUS USER I.D., WE

19   DON'T HAVE AN INTERCEPTION OF CONTENTS UNDER THE STATUE, OR IN

20   THE CIPA STATUTE IT'S CALLED CONFIDENTIAL COMMUNICATION.  SO

21   THERE ISN'T ANY CONFIDENTIAL COMMUNICATIONS THERE.

22          MORE IMPORTANTLY, YOUR HONOR, I THINK WHAT'S MORE ON

23   POINT IS TO, AGAIN, FOCUS ON THE TYPE OF INFORMATION THAT WE'RE

24   DEALING WITH HERE.

25          AND THE CASE THAT WE CITE, THE COURT RULED THAT

1    IT'S -- IF THE INFORMATION IS SHARED -- EXCUSE ME -- ARCHIVED,

2    PRINTED, OR SAVED, THAT COULD BE THE -- YOU KNOW, SOMETHING

3    THAT WOULD LEAD TO CONFIDENTIAL COMMUNICATION, BUT THAT'S THE

4    YAHOO INSTANT MESSAGING CASE.

5         THERE A USER WAS COMMUNICATING WITH SOMEBODY OVER

6    YAHOO INSTANT MESSAGING, AND DIDN'T KNOW WHO THE PERSON ON THE

7    OTHER SIDE OF THE COMMUNICATION WAS, AND WAS MAKING A -- IT WAS

8    A CRIMINAL CASE WHERE THE DEFENDANT WAS MAKING THE CLAIM THAT

9    THAT COULD HAVE BEEN CONFIDENTIAL COMMUNICATION UNDER THE CIPA

10   STATUTE, AND THE COURT RULED THERE THAT'S A NO-GO.

11        SO I THINK WE HAVE A VERY SIMILAR TYPE OF

12   COMMUNICATION HERE WHERE NON-CONTENT INFORMATION, ANONYMOUS

13   USER I.D. AND ANONYMOUS GEO LOCATION INFORMATION DOESN'T EVEN

14   GIVE RISE TO THE TYPE OF INFORMATION THAT WAS IN THE YAHOO

15   MESSENGER CASE.

16        **THE COURT:**  WHAT CALIFORNIA CASE WOULD I LOOK AT THAT

17   WOULD SHOW THAT THE I.D. AND THE LOCATION ARE PRIVATE?

18        **MR. BURTON:**  WELL, YOUR HONOR, YOU HAVE TO LOOK AT

19   THE ACTUAL CODE SECTION, BECAUSE THEY'RE TRYING TO LUMP ALL OF

20   CIPA INTO ONE OVERALL ARGUMENT.  IN OTHER WORDS, THERE'S

21   DIFFERENT PROHIBITIONS ON OBTAINING PRIVATE INFORMATION WITHIN

22   CIPA, SEVERAL DIFFERENT SECTIONS.

23        THEY'RE CITING CASE LAW, NOT TALKING ABOUT 637.7 --

24   IT'S TALKING ABOUT 632 AND OTHER PORTIONS OF CIPA.  THEN

25   THEY'RE TRYING TO PIGGYBACK THOSE ON TO 637.7.

1            637.7 IS VERY SPECIFIC.  IT SAYS NO PERSON OR ENTITY

2     IN THIS STATE SHALL USE AN ELECTRONIC TRACKING DEVICE TO

3     DETERMINE THE LOCATION OR MOVEMENT OF A PERSON, WHICH IS

4     EXACTLY WHAT THEY DID.  OKAY?  THERE IS NO REQUIREMENT FOR THIS

5     PORTION OF CIPA THAT THE INFORMATION IS SOMEHOW OTHERWISE

6     PRIVATE OR A COMMUNICATION OR WHATEVER ELSE IT IS.  THEY'RE

7     CITING CASES --

8            **THE COURT:**  WE KNOW LOCATION IS PRIVATE, BECAUSE THE

9     SUPREME COURT EVEN REQUIRES, RIGHT, PROBABLY CAUSE FOR LAW

10    ENFORCEMENT TO REAL TIME TRACK LOCATIONS.  SO THERE'S NO

11    QUESTION THAT THE LOCATION IS PRIVATE INFORMATION.

12           **MR. OOT:**  SO I THINK YOU'RE REFERENCING THE *JONES*

13    CASE, YOUR HONOR.  IN THAT CASE YOU HAD AN ACTUAL TRESPASSING.

14    JUDGE SOTOMAYOR DISCUSSED PUTTING A DEVICE ON A CAR ACTUALLY

15    HAS AN ANALOGY TO A PHYSICAL TRESPASS, SO THAT WOULD GIVE RISE

16    TO YET AN EXTRA LAYER OF PROTECTION THAT SOMEBODY WOULDN'T

17    EXPECT, AND THAT'S THE TYPE OF PROTECTION --

18           **THE COURT:**  THEN YOU LOOK AT JUSTICE SOTOMAYOR'S

19    CONCURRENCE, AND I THINK -- LOOK, I MEAN, I CAN TELL YOU -- YOU

20    KNOW, YOU WERE IN THE GOVERNMENT.  EVERY LAW ENFORCEMENT, U.S.

21    ATTORNEY, THEY COME HERE AND GET A WARRANT.  THEY WOULD NEVER

22    ACTUALLY TRY TO BRING A CASE, PROSECUTE IT, HAVING FOLLOWED IN

23    REAL TIME WITH A GPS TRACKER THROUGH GETTING -- IN OTHER WORDS,

24    THE SUPREME COURT IS GOING TO DECIDE WHETHER HISTORICAL CELL

25    SITE INFORMATION REQUIRES PROBABLE CAUSE.  MOST PEOPLE THINK

1   THEY'RE PROBABLY GOING TO SAY NO.  THERE REALLY ISN'T ANY

2   DISPUTE, I THINK, THAT REAL TIME REQUIRES PROBABLE CAUSE, SO

3   THERE'S AN UNDERSTANDING THAT THAT'S PRIVATE.

4           **MR. OOT:**  BUT THERE'S AN EXCEPTION HERE, YOUR HONOR.

5   WHAT WE'RE TALKING ABOUT IS REAL TIME GPS LOCATION THAT'S

6   BROADCAST TO THE GENERAL PUBLIC.  SO IT'S NOT, YOU KNOW,

7   PERSONAL INFORMATION (INDISCERNIBLE) WITH THE *JONES* CASE AND

8   WHAT THE SUPREME COURT WILL BE LOOKING AT THIS YEAR.

9           WE'RE TALKING ABOUT NON-CONFIDENTIAL COMMUNICATION

10  WHICH IS ESSENTIALLY ON YOUR LICENSE, WORLDWIDE ROYALTY-FREE

11  LICENSE TO BROADCAST IN PERPETUITY MULTIPLE PLATFORMS TO SEND

12  ANYWHERE.

13          SO TO SAY THAT I LATER HAVE A CIPA CLAIM OR PRIVACY

14  INTEREST FOR INFORMATION THAT I'M SENDING OUT TO THE WORLD OR

15  ESSENTIALLY PUTTING ON A BILLBOARD I DON'T THINK IS --

16          (SIMULTANEOUS COLLOQUY.)

17          **THE COURT:**  WELL, YOU'RE SENDING OUT TO PEOPLE WHO

18  ARE LEGITIMATELY ON THE LYFT APP.

19          **MR. OOT:**  WELL -- BUT THE DIFFERENCE, YOUR HONOR, THE

20  TWO CASES THAT TOUCH ON THIS ARE IN OUR FAVOR.  THAT'S *SNOW V.*

21  *DIRECTV* CASE AND THE *KONOP V. HAWAIIAN AIRLINES* CASE WHERE A

22  SHAM LOG-IN AND PASSWORD, ON AN EMAIL ADDRESS AND CREDIT CARD,

23  THAT'S NOT GOOD ENOUGH FOR PRIVACY PROTECTION.  IF ANYBODY IN

24  THE GENERAL PUBLIC CAN CREATE AN ACCOUNT, IT'S JUST AS GOOD AS

25  BEING BROADCAST TO THE GENERAL PUBLIC.

1          **THE COURT:**  ALL RIGHT.  WELL, THIS IS WHAT I -- THIS

2     IS WHAT I WANT TO DO, BECAUSE I WANT TO DECIDE THIS ON ACTUAL

3     FACTUAL ALLEGATIONS, AS OPPOSED TO A NEWSPAPER ARTICLE, THEN I

4     CAN (INDISCERNIBLE) AND THEN I CAN WRITE SOMETHING AND REALLY

5     FIGURE IT OUT.

6          SO I'M GOING TO -- I DON'T KNOW.  I'LL LOOK AT IT.  I

7     WANT YOU TO AMEND THE COMPLAINT.  SO I'M GOING TO DISMISS IT

8     WITH LEAVE TO AMEND, AND I WANT YOU TO ACTUALLY MAKE

9     ALLEGATIONS AND NOT JUST QUOTE FROM A NEWSPAPER.  IT'S OKAY

10    THAT YOU RELY ON IT, BUT ACTUALLY DO SOMETHING AND TRY TO FIT

11    THEM WITHIN.

12         **MR. BURTON:**  UNDERSTOOD, BUT I'M NOT SURE WHERE THE

13    DEFECT WOULD BE IN THE CIPA CAUSE OF ACTION.

14         **THE COURT:**  I'M JUST TELLING YOU I'M HAVING YOU AMEND

15    IT.  I'M GOING TO WRITE SOMETHING.  I'M GOING TO DO IT ALL AT

16    ONCE, AND I'LL FIGURE IT OUT, BECAUSE I DON'T EVEN QUITE

17    KNOW -- I MEAN, WE'VE HAD A LOT OF ARGUMENT AND STUFF, BUT NONE

18    OF IT IS IN THE COMPLAINT BECAUSE THE COMPLAINT IS JUST A

19    NEWSPAPER ARTICLE.

20         SO IF I'M GOING TO DENY A MOTION TO DISMISS, I'M

21    GOING TO BASE IT ON FACTUAL ALLEGATIONS AND NOT BASED ON A

22    NEWSPAPER ARTICLE.  ALL RIGHT?  SO I'M GOING TO DO IT ALL AT

23    ONCE.

24         **MR. BURTON:**  I JUST WANT TO POINT YOUR ATTENTION, WE

25    DID INCLUDE IN OUR BRIEFING, BUT FROM THE NINTH CIRCUIT, THE

1  THEOFELD (PHONETIC) CASE, WHICH BASICALLY SAYS WHEN YOU OBTAIN

2  ACCESS THROUGH FALSE PRETENSES, YOU KNOW, THAT'S NOT CONSENT,

3  THAT'S NOT A LEGITIMATE WAY OF EXCUSING YOURSELF FROM ACCESSING

4  THE INFORMATION.  BUT WE'LL KEEP THAT IN MIND, YOUR HONOR.

5          **THE COURT:**  YEAH.  I WILL DO IT, BUT I JUST WANT TO

6  DO IT ALL AT ONCE BASED ON FACTUAL ALLEGATIONS THAT WE CAN

7  ACTUALLY LOOK AT AND THEN FIGURE OUT THAT WAY.

8          HOW MUCH TIME DO YOU NEED TO AMEND?

9          **MR. BURTON:**  COUPLE WEEKS AT LEAST, YOUR HONOR.

10          **THE COURT:**  AND THEN YOU'LL JUST RESPOND?

11          **MR. OOT:**  THANK YOU, YOUR HONOR.

12          **THE COURT:**  I'M SURE YOU'LL MOVE TO DISMISS AGAIN,

13  AND THEN WE'LL DEAL WITH IT AGAIN.  BUT THIS WAY YOU HAVE SOME

14  DIRECTION, WE UNDERSTAND THE ARGUMENTS, AND IT'S HELPFUL FOR

15  NEXT TIME.

16          **THE CLERK:**  CAN I VACATE THE 9/28 --

17          **THE COURT:**  YEAH, WE'LL VACATE THE --

18          **MR. BURTON:**  YOUR HONOR, WE'D REALLY LIKE TO KEEP

19  THAT CMC ON CALENDAR BECAUSE WE HAVE SOME CONCERNS,

20  PARTICULARLY AS IT CONCERNS PRESERVATION.

21          **THE COURT:**  LET'S JUST FIGURE OUT THOSE CONCERNS.  I

22  DON'T THINK WE NEED CMC TO DO THAT.  WE'LL DO THAT RIGHT NOW.

23  SO WITH RESPECT TO THIS TO THE EXTENT IT EXISTS,

24  (INDISCERNIBLE) PROGRAM, IS EVERYTHING BEING PRESERVED?

25          **MR. OOT:**  YOUR HONOR, IT'S THE COIN PROGRAM, NOT --

1              **THE COURT:**  COIN.

2              **MR. OOT:**  NOT (INDISCERNIBLE).  BUT I CAN TELL YOU

3    UNDER MY OBLIGATION TO THE COURT THAT INFORMATION IS PRESERVED.

4    LITIGATION (INDISCERNIBLE) NOTICE HAVE BEEN SENT OUT.  NO

5    INFORMATION IS BEING DESTROYED.

6              **MR. BURTON:**  AND THEY'VE TOLD US THAT ORALLY, YOUR

7    HONOR, BUT THIS IS THE PROBLEM:  WE HAVEN'T BEEN ABLE TO GET

8    THEM TO ACTUALLY PUT IN WRITING WHAT THEY'RE ACTUALLY DOING TO

9    PRESERVE THAT INFORMATION.  WE PROPOSED AN ACTUAL PRESERVATION

10   ORDER (INDISCERNIBLE) THAT WE'D LIKE ENTERED, AND THEY DIDN'T

11   WANT TO ENGAGE IN --

12             **THE COURT:**  YOU MEAN ENTERED AS AN ORDER?  WE DON'T

13   NORMALLY REQUIRE THAT.  HE JUST SAID AS AN OFFICER OF THE

14   COURT, HE REPRESENTED IN OPEN THE COURT, TO ME, THAT IT'S BEING

15   PRESERVED.  I WOULD GO BACK AND CHECK AGAIN.  IF IT TURNS OUT,

16   CASE GOES FORWARD AND NONE OF THAT STUFF IS PRESERVED, WELL,

17   NOW YOU'VE GOT A REAL ADVERSE INFERENCE, AND SPOLIATION SET UP

18   REALLY WELL.

19             **MR. BURTON:**  THERE'S A LOT OF STEPS BETWEEN THE

20   TWO --

21             **THE COURT:**  YEAH, I KNOW.

22             **MR. BURTON:**  -- BECAUSE THERE'S VERY SPECIFIC THINGS

23   THAT WE WANT THEM TO DO IN ORDER TO PRESERVE THE INFORMATION.

24             **THE COURT:**  YOU DON'T EVEN KNOW WHAT THEY DO, SO I

25   DON'T KNOW HOW YOU CAN TELL THEM HOW TO PRESERVE IT, BECAUSE

1  YOU COULDN'T EVEN TELL ME HOW IT WORKS.  THEY KNOW HOW IT

2  WORKS.  I'M ASSUMING THAT THEY KNOW HOW TO GO THROUGH AND

3  PRESERVE IT, LIKE ANY ROUTINE DESTRUCTION HAS ALL BEEN TURNED

4  OFF.  ALL THAT KIND OF STUFF.  I KNOW, I KNOW.  I KNOW WITH

5  THIS COMPANY -- I KNOW WITH (INDISCERNIBLE).  I KNOW THERE'S

6  AUTOMATIC DESTRUCTION THAT GOES ON.  I'M ASSUMING IT'S ALL BEEN

7  TURNED OFF.

8       **MR. OOT:**  THAT'S NOT HAPPENING, YOUR HONOR,

9  (INDISCERNIBLE).

10       **THE COURT:**  DOUBLE NEGATIVER THERE.  IT'S ALL

11  HAPPENING.

12       **MR. BURTON:**  YOUR HONOR, IT'S STILL AN ISSUE FOR US

13  THAT WE WOULD LIKE TO DISCUSS DURING THE CMC.

14       **THE COURT:**  WHY?  BUT WHAT BASIS DO YOU HAVE, BECAUSE

15  I TELL YOU I DO A LOT OF CASES, AND I NORMALLY DON'T ENTER A

16  PRESERVATION ORDER.  NORMALLY, WHEN COUNSEL REPRESENTS THEY'VE

17  DONE THAT, THAT'S GOOD ENOUGH.  SO TELL ME WHAT LEADS YOU TO

18  BELIEVE IT'S NOT GOOD ENOUGH HERE.

19       **MR. BURTON:**  BECAUSE THERE'S SPECIFIC THINGS WE WANT

20  DONE IN ORDER TO PRESERVE INFORMATION AND WE NEED TO HAVE THAT

21  ASSURANCE THAT --

22       **THE COURT:**  OKAY.  LIKE WHAT?

23       **MR. BURTON:**  I'M SORRY.  I'M NOT PREPARED TO DISCUSS

24  ALL THE TECHNICAL THINGS THAT WE LISTED IN OUR PROTECTIVE

25  ORDER, YOU KNOW.  THIS IS WHAT WE'RE PREPARING FOR THE CMC.

1          BUT, OBVIOUSLY, THIS IS A CASE WHERE WE DON'T EXACTLY

2     KNOW, NOT ONLY WHAT THEY WERE DOING TO PRESERVE DOCUMENTS, BUT

3     HOW EXACTLY THEY WERE DOING THIS PROGRAM.  THEY'VE ACKNOWLEDGED

4     THAT THEY WERE DOING THE PROGRAM.

5          **THE COURT:**  YES.

6          **MR. BURTON:**  OKAY.  AND WE'D LIKE TO START MOVING ON

7     DISCOVERY --

8          **THE COURT:**  NO, WE'RE NOT GOING TO MOVE ON THAT UNTIL

9     WE GET PAST THE PLEADING STAGE.  SO THAT'S FINE.  BUT I -- SO

10    THAT'S A DIFFERENT ARGUMENT ABOUT PRESERVATION.  WHAT I WANT TO

11    KNOW IS WHY YOU BELIEVE THAT THE REPRESENTATION THAT THE

12    PRESERVING EVERYTHING ISN'T GOOD ENOUGH.

13         **MR. BURTON:**  BECAUSE THEY WON'T TELL US EXACTLY WHAT

14    THEY'VE DONE TO PRESERVE THINGS.  WE'VE ASKED THEM TO PUT IN

15    WRITING, OKAY, WHAT INFORMATION IS BEING PRESERVED EXACTLY, HOW

16    DID YOU TAKE STEPS TO PRESERVE THAT INFORMATION, AND WE DON'T

17    KNOW WHAT THAT IS.

18         **MR. OOT:**  AND I'VE GIVEN HIM ASSURANCES THAT I

19    CONDUCTED A REASONABLE INQUIRY UNDER 26(G).  EVERYTHING IS

20    BEING PRESERVED, YOUR HONOR.

21         TO SORT OF MOVE INTO THIS DISCOVERY PHASE IS I THINK

22    A VIOLATION OF *TWOMBLY IQBAL*.  YOU KNOW, I'M HAPPY TO MAKE

23    ADDITIONAL ASSURANCES --

24         **THE COURT:**  THAT'S NOT QUITE TRUE.  IT'S NOT A PSLRA

25    CASE.  THERE'S NOT -- THERE'S NO STAY HERE.  NONETHELESS, I DO

1    THINK IT'S APPROPRIATE HERE THAT WE GET PAST THE PLEADING

2    STAGE.

3              **MR. OOT:**  THANK YOU, YOUR HONOR.

4              **THE COURT:**  BEFORE THEN.

5              ALL RIGHT.  I DON'T THINK WE NEED CMC.  THEY

6    REPRESENTED THAT IT'S BEING PRESERVED.  IT'S EXPERIENCED

7    COUNSEL.  IT'S AN EXPERIENCED COMPANY.  THEY'RE WELL AWARE OF

8    THEIR OBLIGATIONS.  IF I HAVE TO EAT MY HAT, THEY'LL PAY.

9              ALL RIGHT.  I'M SURE I'LL SEE YOU BACK IN A COUPLE

10   MONTHS.  THANK YOU.

11              (PROCEEDINGS ADJOURNED AT 9:48 A.M.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        **CERTIFICATE OF TRANSCRIBER**

2

3        I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

4   TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF

5   THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE

6   U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE

7   PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE

8   ABOVE MATTER.

9        I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR,

10  RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN

11  WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT

12  FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE

13  ACTION.

14

15                    *JMColumbini*

16                    JOAN MARIE COLUMBINI

17                    SEPTEMBER 8, 2017

18

19

20

21

22

23

24

25

*JOAN MARIE COLUMBINI, CSR, RPR*
*RETIRED OFFICIAL COURT REPORTER, USDC*
*510-367-3043*