Patrick L. Oot, Jr. (admitted *pro hac vice*)
SHOOK, HARDY & BACON L.L.P.
1155 F Street, N.W., Suite 200
Washington, D.C. 20004
Telephone:     202.783.8400
Facsimile:     202.783.4211
Email: oot@shb.com

John K. Sherk (SBN 295838)
M. Kevin Underhill (SBN 208211)
SHOOK, HARDY & BACON L.L.P.
One Montgomery, Suite 2700
San Francisco, CA 94104
Telephone:     415.544.1900
Facsimile:     415.391.0281
Email: jsherk@shb.com
Email: kunderhill@shb.com

Attorneys for Defendants
UBER TECHNOLOGIES, INC.;
UBER USA, LLC; and RASIER-CA

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHAEL GONZALES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.; UBER USA, LLC; RAISER-CA, and DOES 1-10, inclusive;<br><br>Defendants. | Case No. 3:17-cv-02264-JSC<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION** |

**INTRODUCTION**

The Court has asked the parties to address two potentially dispositive arguments: (1) that Mr. Gonzales cannot recover money under the UCL because he alleges a "lost opportunity to earn revenue, not a loss of money already earned"; and (2) that he is "not entitled to injunctive relief because he stopped driving for [Lyft] in 2014." Gonzales has not addressed either one.

First, though Gonzales again claims entitlement to restitution, he does not even argue he "lost money" he had already earned or to which he had a previously vested right, the only situations in which restitution is available under the UCL. Rather, he simply asserts that it was enough to allege "he lost passengers" to drivers using Uber's app because of the alleged unfair conduct. He did not specifically allege that in his *complaint*, but even if he had it would not describe a claim for restitution that is actionable under the UCL. Neither *Kwikset* nor any of the other cases he cites held that a plaintiff could recover money in similar circumstances.

Second, in arguing that he can seek injunctive relief, Gonzales does not even specifically *mention* the fact that he stopped driving for Lyft in 2014, much less explain why an injunction in 2018 (or later) would benefit him. He did not allege, nor does he now argue, that he has any interest in using the Lyft app again. It would not matter if he had, because he also concedes that Uber stopped the alleged data-collection program in 2016. Given these facts, it is unsurprising that Gonzales offers only the most vague, conclusory, and speculative arguments as to why he might benefit from prospective injunctive relief. He suggests Uber might misuse the data it allegedly collected about him during 2014, but never explains how misuse of that nearly four-year-old data might harm him today. He suggests Uber might start collecting Lyft driver data again, but never explains why that would harm someone who does not drive for Lyft today and has expressed no interest in doing so. His allegations that the program harmed *anyone* are speculative at best, but he has shown no reason at all to think *he* would benefit from prospective injunctive relief.

In short, Gonzales not only failed to allege a basis for a UCL claim, he has now essentially conceded that he is not entitled to either restitution or injunctive relief. If he has any viable damages claims, he will have another chance to allege them. But he has already conceded facts showing he cannot recover under the UCL, and so the Court should dismiss that claim with prejudice.

**ARGUMENT**

**I.      Gonzales concedes he cannot recover money by means of his UCL claim.**

Nowhere does Gonzales argue he lost even a dollar he had already earned or to which he had a vested right of any kind. Instead, in the one paragraph where he discusses his own situation specifically, he argues only that he "suffered economic harm because he lost passengers" to drivers using Uber's app, and "because Lyft was rendered less competitive due to [Uber's] scheme." Opp. at 7:10–11. He does not cite his complaint in that paragraph, possibly because he did not specifically allege that *he* ever lost a passenger as a result of the scheme. *See id.*; *see also* FAC ¶¶ 18–22 (the only allegations mentioning Gonzales himself). But even if he had, it would have described only lost opportunities to earn revenue, not losses recoverable under the UCL. *See A White and Yellow Cab, Inc. v. Uber Technologies, Inc.*, No. 15-cv-05163-JSW, 2017 WL 1208384, at *3, 10–11 (N.D. Cal. Mar. 31, 2017) (holding taxi company could not seek restitution under UCL based on claim that Uber unfairly "took fares away from Plaintiff"); *L.A. Taxi Cooperative, Inc. v. Uber Technologies, Inc.*, 114 F. Supp. 3d 852, 867–68 (N.D. Cal. 2015) (same holding where drivers alleged unfairly influenced customers to "use Uber rather than taking a taxi"). As in those cases, Gonzales is not seeking "restitutionary damages," as he claims at one point. Opp. at 6:8. He is seeking "exactly the type of nonrestitutionary disgorgement [damages] precluded under *Korea Supply*." *L.A. Taxi*, 114 F. Supp. 3d at 867–68 (quoting *Luxpro Corp. v. Apple Inc.*, No. 10-cv-03058-JSW, 2011 WL 3566616, at *8 (N.D. Cal. Aug. 12, 2011)); *see* Uber's Mot. (Dkt. 52) at 3–4 (discussing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003)). Because "compensation for a lost business opportunity is a measure of damages and not restitution to the alleged victims," Gonzales cannot recover these lost profits under the UCL. *Korea Supply*, 29 Cal. 4th at 1151.

Nor does the *Fladeboe* case assist him. *See* Opp. at 6:18–7:2 (citing *Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App. 4th 42, 68 (2007)). According to Gonzales, in that case "the defendant wrongfully obtained dealer sales incentive payments from manufacturers" by misrepresenting itself as an authorized dealer, and "was determined by the court to have obtained 'money or property' owed to plaintiff." *Id.* That description suggests the case involved damages to a competing dealer. In fact, the defendant (Fladeboe, on a cross-claim) wrongfully obtained dealer sales incentive payments

from *Isuzu* (the cross-claim plaintiff) by misrepresenting itself to Isuzu as an authorized Isuzu dealer. 150 Cal. App. 4th at 68. In other words, *Fladeboe* is simply a case in which a defendant defrauded a plaintiff into giving it money, and so it is not surprising the court held it could use the UCL to get its money back. That is restitution. Gonzales seeks nonrestitutionary damages.

The *Kwikset* court did state, as Gonzales notes, that "[t]here are innumerable ways in which economic injury from unfair competition may be shown," and it suggested a few. *Kwikset v. Superior Court*, 51 Cal. 4th 310, 323 (2011). But Gonzales never explains which of those he believes would encompass his "lost opportunity" claim. *See* Opp. at 5:23–6:17. *Kwikset* was a typical UCL case in which the plaintiff alleged he paid money to buy a product that was mislabeled (as "Made in the U.S.A."), and he wanted that money back. *See* 51 Cal. 4th at 316, 319, 327–28. The court held he had standing because he "lost" the purchase price. Thus, *Kwikset* held that "plaintiffs who can truthfully allege they were deceived by a product's label into spending money to purchase the product, and would not have purchased it otherwise, have 'lost money or property' within the meaning of [the UCL.]" *Id*. at 316. This is so even if they would not ultimately be "eligible for restitution" because, for example, the product functions perfectly well and so the plaintiff arguably has not lost the "benefit of the bargain." *Id*. at 335–37. But *Kwikset* simply did not involve a "lost opportunity" damages claim like Gonzales's claim here.

And even after *Kwikset*, many courts have dismissed UCL claims after finding that they seek nonrestitutionary damages and not "lost money or property." *See, e.g.*, *In re Facebook Privacy Litig.*, 572 F. App'x 494, 494 (9th Cir. 2014) (holding injury based on "lost sales value" of personal information might allege fraud damages, but not "lost money or property"; citing *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 993–94 (2011)); *In re Yahoo! Inc. Customer Data Security Breach Litig.*, No. 16-MD-02752-LHK, 2018 WL 1243332, at *9 (N.D. Cal. Mar. 9, 2018) (holding plaintiff alleging he paid for services worth less than advertised had stated a UCL claim, but plaintiffs alleging only "future costs" had not); *Bontrager v. Showmark Media LLC*, No. CV 14-01144, 2014 WL 12600201, at *8–9 (C.D. Cal. June 20, 2014) (dismissing UCL claim for "lost time, bandwidth, and email storage" because plaintiff did not allege "lost money or property"); *Folgelstrom*, 195 Cal. App. 4th at 993–94 (dismissing UCL claim where plaintiff did not "allege that

he made a purchase or otherwise parted with money"); *Archer v. United Rentals, Inc.*, 195 Cal. App. 4th 807, 816 (2011) (holding claims alleging unlawful collection and storage of personal information did not allege "lost money or property" under *Kwikset*). While Gonzales cites a handful of cases suggesting that a plaintiff in his situation could seek injunctive relief, those cases still involved at least some out-of-pocket expenditures. *See In re Anthem, Inc. Data Breach Litig.*, No. 16-MD-02752-LHK, 2016 WL 3029783, at *30 (N.D. Cal. May 27, 2016) (noting plaintiffs alleged they "paid money for health insurance premiums" because of unfair practices); *Law Offices of Matthew Higbee v. Expungement Assistance Servs.*, 214 Cal. App. 4th 544, 560 (2013) (noting plaintiff alleged it was "forced to pay increased advertising costs"); *Fulford v. Logitech, Inc.*, No. C 08-2041, 2009 WL 1299088, at *2 (N.D. Cal. May 8, 2009) (noting plaintiff alleged he spent $200 on product because of misrepresentation). Gonzales has made no such allegations here.

In short, Gonzales does not materially dispute the point that he cannot recover money under the UCL because he alleges only a "lost opportunity" to earn, not an actual loss of money or property or even a vested claim. His claim is for nonrestitutionary damages, and he has not shown that his legal remedies would be inadequate to recover such losses—if he actually suffered any.

## II. Gonzales did not allege and has not shown a basis for seeking injunctive relief.

Gonzales stopped driving for Lyft in 2014, did not allege any intention to do so again in the future, and has admitted that Uber stopped collecting the purportedly private data years ago. *See* Uber's Mot. at 1–3. The Court specifically mentioned the first of these in its order. But rather than addressing it, Gonzales avoids it. He argues instead that (1) Uber's argument "raises factual issues outside the complaint" or is otherwise not suitable for determination on a motion to dismiss; (2) Uber may start collecting the data again in the future if not enjoined; and (3) Uber may still be using, or may start using, the data it collected in the past. *See* Opp. at 2:1–5:22. All these arguments fail.

First, Uber's argument does not raise "factual issues outside the complaint." Gonzales alleged that Uber collected data beginning in 2014, and ending in early 2016. FAC ¶¶ 8, 50, 52. He alleged he stopped using the Lyft app in "approximately November 2014." *Id.* ¶ 19. These are Gonzales's facts, not Uber's. Nor does it improperly go "outside the complaint" to point out what Gonzales failed to allege in it, such as an intent to use the Lyft app again in the future. In fact, this

Court has dismissed an injunctive-relief claim based on a similar argument. *Jou v. Kimberly-Clark Corp.*, No. C-13-03075-JSC, 2013 WL 6491158, at *3–4 (N.D. Cal. Dec. 10, 2013). This also disposes of Gonzales's claim that injunctive relief "generally" cannot be determined on a motion to dismiss, a rule not found in the case he cites or any other. *See* Opp. at 3:9–18 (citing *Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2011 WL 2111796, at *12 (N.D. Cal. May 26, 2011)). It depends on the allegations in a particular case, and here Gonzales's allegations fall short.

Second, Gonzales's argument that Uber might start collecting data again if not enjoined is irrelevant, because it has nothing to do with *him*. Having alleged that he stopped using the Lyft app in 2014, and having failed to allege any intent to start again, he has no basis for suggesting that he might suffer harm from this possible future conduct. Notably, instead of addressing the Court's question about the 2014 date, Gonzales repeatedly tries to lump himself in with those who may be using the Lyft app today by referring to "Plaintiff and the Class." Opp. at 2:19, 4:7, 5:8–13. The question is whether *he* has standing to seek an injunction, not whether someone in the class might. *See* Uber's Mot. at 1:20–28 (citing cases). And just as in *White & Yellow Cab*, he has no standing because he is out of the relevant business. 2017 WL 1208384, at *5. He did not allege and does not now argue that he might get back into it, which distinguishes the *Davidson* case on which he heavily relies. *See Davidson v. Kimberly-Clark Corp.*, No. 15-16173, 2018 WL 2169784, at *9 (9th Cir. May 9, 2018) (as amended on denial of petition for rehearing en banc). Gonzales claims at one point he has "conformed his complaint to the *Davidson* standard," but the cited paragraphs are conclusory and state only a general entitlement to injunctive relief.  Opp. at 3:25–4:2 (citing FAC ¶¶ 45, 138).

Beyond that, Gonzales offers nothing but speculation to suggest that Uber might start collecting the same data again. It is true there is no "hard-and-fast rule" that discontinuing a practice means it cannot be enjoined. Opp. at 3:18 (citing *Robinson v. U-Haul Co. of Cal.*, 4 Cal. App. 5th 304, 315 (2016)). But the question here is whether Gonzales has pleaded facts alleging a substantial risk he will again be wronged in a similar way. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *see Jou*, 2013 WL 6491158, at *3–4 (citing *Lyons*; dismissing claim for prospective injunctive relief where plaintiffs did not allege interest in buying product again). The only relevant fact he has alleged is that Uber *stopped* collecting the data more than two years ago. The FAC does

not contain a single allegation suggesting Gonzales has any reason to believe Uber might start again—which explains why he cites nothing but generic references to injunctive relief. *See, e.g.*, Opp. at 2:16–3:8 (arguing that Uber "may reinitiate the same illicit conduct," without citing the FAC). As for his arguments that injunctive relief is appropriate because Uber "may continue to employ other misleading practices" or because Uber has been defending its conduct (*see* Opp. at 3:23–4:8), those are not supported by his allegations or by the law. As Magistrate Judge Beeler recently held, accusing a company of being dishonest is no substitute for pleading a plausible risk of immediate harm. *Antman v. Uber Technologies, Inc.*, No. 15-cv-01175-LB, 2018 WL 2151231, at *11 (N.D. Cal. May 10, 2018) (dismissing for lack of standing). Again, of course, even if Uber did restart the program, Gonzales has alleged no facts showing any risk it would affect *him*.

Finally, Gonzales argues that even if Uber has stopped collecting the data, it still has what it collected previously[1] and might misuse that. Opp. at 2:16–19; 3:5; 4:15–5:15. This makes no sense. Since he alleges the purpose of the program was to allow Uber to see "in real time" where Lyft drivers were located (FAC ¶¶ 50 at p. 11:5, 95) so it could try to determine who was also using the Uber app, the argument that it might try now to use data that is at least two years old conflicts with his whole theory of the case. The argument is even weaker, of course, as to Gonzales himself. Any data Uber might have about him would be at least three-and-a-half years old at this point. As Uber pointed out in its motion, he has never articulated any reason why he might be injured today if Uber still has data about where he was located more than three years ago, and he has not articulated one in his opposition. It is hard to see how he could, since the Court found he had no reasonable expectation of privacy in his location or even in his home address while using the Lyft app as a driver. *Gonzales v. Uber Technologies, Inc*., 2018 WL 1863148, at *9 (N.D. Cal. Apr. 18, 2018).

Possibly for that reason, Gonzales relies on data-breach cases (decided in other circuits) to argue that injunctive relief is warranted simply because Uber may still have "the vast trove of data [it] previously stockpiled," could only have a nefarious reason for keeping it, and that "[a]t any time,

---

[1] Gonzales suggests that by arguing a data-preservation order was unnecessary because Uber has a litigation hold in place, Uber's counsel was necessarily admitting that "Uber maintains all of its ill-gotten data and the Hell spyware code." Opp. at 4:20–22. Obviously, a litigation hold means only that Uber is preserving whatever data it had when its duty to preserve began.

Def.s' Reply in Support of Reconsideration
                                                                3:17-cv-02264-JSC

someone in or below Uber's ever-revolving C-Suite" might try to use it. Opp. at 4:24–5:22 (citing *Remijas v. Nieman Marcus Grp., LLC*, 794 F.3d 688, 693–94 (7th Cir. 2015) and *In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*, No. 1:14-MD-2583, 2016 WL 2897520, at *4 (N.D. Ga. May 18, 2016)). That Gonzales is even suggesting some as-yet-unhired executive might find a use for the data shows just how speculative his arguments are. But the data-breach cases actually support Uber's position that Gonzales has not alleged facts justifying prospective injunctive relief.

Those cases involve hackers breaking into corporate databases and stealing private, personally identifiable information. *See, e.g.*, *In re Zappos.com, Inc.*, 888 F.3d 1020, 1023 (9th Cir. 2018). In *Zappos*, for example, the information included names, account numbers, passwords, email addresses, billing and shipping addresses, phone numbers, and credit and debit card information. *Id*. Given "the sensitivity of the stolen data, combined with its theft," along with other allegations showing that the data had in fact been used by hackers to access some accounts, the Ninth Circuit held that those plaintiffs had "sufficiently alleged an injury in fact based on a substantial risk that the Zappos hackers will commit identity fraud or identity theft." *Id*. at 1029. The cases Gonzales cites involved similar allegations. *Remijas* at 689–90; *Home Depot* at *1-2. His own case does not. In *Remijas*, in fact, the court stated that the loss of private information alone, without a showing that there was a substantial risk of future harm, would not have supported standing. 794 F.3d at 695. Here, though Gonzales continues to use the word "hack," he has not alleged or shown that Uber even tried to collect private data of the kind involved in the data-breach cases. He has speculated that Uber might have been able to determine his home address—but again, this Court has already held he could not have expected that to remain private. *See also, e.g.*, *Svenson v. Google Inc.*, No. 13-CV-04080-BLF, 2016 WL 8943301, at *16 (N.D. Cal. Dec. 21, 2016) (discussing *Remijas* and similar cases; holding that because there was no evidence anyone outside of Google viewed plaintiff's information, plaintiff had not shown concrete risk of future injury).

In short, the data-breach cases do not assist Gonzales because as the Ninth Circuit pointed out in *Zappos*, in those cases too the outcome depends on the facts at issue—"particularly, the types of data allegedly stolen." *Id*. at 1026 n.6. Here, Gonzales has not alleged the same sort of risk involved as in those cases. He cannot. His theory of the case is that Uber used the data it collected—

Def.s' Reply in Support of Reconsideration
3:17-cv-02264-JSC

which was not personally identifiable information, only location and an anonymized driver ID—to identify and offer bonuses to drivers using both companies' apps. But it could identify those people (the dual-app drivers) only *because* they were using both companies' apps, and so had willingly given personal information to Uber as well as Lyft. By Gonzales's own admission, he was not one of those people. He never used Uber's app, and has not used Lyft's app since 2014. He has offered no reason to think he faces any risk of injury today, almost four years later.

**CONCLUSION**

Gonzales has not addressed either of the issues the Court raised. He effectively concedes he cannot recover money via a UCL claim, and points to no facts that might entitle him to prospective injunctive relief. To the contrary, he alleged facts that preclude it. He conceded Uber stopped collecting the allegedly private data two years ago, and that he stopped using Lyft's app almost two years before that. He has not articulated, much less alleged, any facts showing a risk of future injury to him. Because he has conceded facts showing he cannot do so, the Court should dismiss his UCL claim with prejudice.

Dated:  May 23, 2018       Respectfully submitted,

                 SHOOK, HARDY & BACON L.L.P.


                 By:   */s/ M. Kevin Underhill*
                   PATRICK L. OOT, JR.
                   JOHN K. SHERK
                   M. KEVIN UNDERHILL

                 Attorneys for Defendants
                 UBER TECHNOLOGIES, INC.;
                 UBER USA, LLC; and RASIER-CA