Patrick L. Oot, Jr. (admitted *pro hac vice*)
SHOOK, HARDY & BACON L.L.P.
1155 F Street, N.W., Suite 200
Washington, D.C. 20004
Telephone:     202.783.8400
Facsimile:     202.783.4211
Email: oot@shb.com

John K. Sherk (SBN 295838)
M. Kevin Underhill (SBN 208211)
Elizabeth A. Lee (SBN 312957)
SHOOK, HARDY & BACON L.L.P.
One Montgomery, Suite 2700
San Francisco, CA 94104
Telephone:     415.544.1900
Facsimile:     415.391.0281
Email: jsherk@shb.com
Email: kunderhill@shb.com
Email: elee@shb.com

Attorneys for Defendants
UBER TECHNOLOGIES, INC.;
UBER USA, LLC; and RASIER-CA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHAEL GONZALES, individually and on behalf of all other similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>UBER TECHNOLOGIES, INC.; UBER USA, LLC; RASIER-CA, and DOES 1-10, inclusive,<br><br>        Defendants. | Case No. 3:17-cv-02264-JSC<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Date:  September 20, 2018<br>Time:  9:00 a.m.<br>Dept.:  Courtroom F – 15th Floor<br>Judge:  Hon. Jacqueline Scott Corley |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

I.      The UCL claims should be dismissed. ................................................................ 2

        A.      Plaintiff hardly bothers to defend his allegations of economic harm. ................... 2

        B.      Plaintiff does not adequately allege a claim for injunctive relief. ......................... 3

II.     The Stored Communications Act claim also fails. ............................................. 5

        A.      Plaintiff's "backup protection" argument makes little sense. ................................ 5

        B.      Plaintiff does not allege Lyft acts as an "electronic communication service."....... 7

        C.      The "tracking device" exception would also defeat Plaintiff's claim here............. 8

III.    The California Data Access and Fraud Act claim fails....................................... 8

        A.      Plaintiff alleges no facts showing he "owned" his Lyft ID or geolocation data..... 8

        B.      Plaintiff fails to allege Uber "circumvented technical or code-based barriers."... 10

        C.      Plaintiff has not plausibly alleged economic harm of any kind........................... 11

IV.     *Carpenter*'s narrow Fourth Amendment holding does not save Plaintiff's case.............. 12

        A.      Plaintiff has not adequately alleged a legally protected privacy interest.............. 12

        B.      *Carpenter* does not give Plaintiff a reasonable expectation of privacy in his
                geolocation data under the circumstances............................................................. 12

        C.      Plaintiff's claim here still fails because he has not alleged a violation
                sufficiently "serious" to violate the state constitution. .......................................... 14

CONCLUSION.................................................................................................................. 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Backhaut v. Apple, Inc.*,
74 F. Supp. 3d 1033 (N.D. Cal. 2014) ..............................................................................8

*Californians for Disability Rights v. Mervyn's, LLC*,
39 Cal. 4th 223 (2006) .....................................................................................................4

*Carpenter v. United States*,
138 S. Ct. 2206 (2018)..........................................................................1, 12, 13, 14, 15

*Cobra Pipeline Co. v. Gas Nat., Inc.*,
132 F. Supp. 3d 945 (N.D. Ohio 2015)..........................................................................6, 7

*Cohen v. Casper Sleep Inc.*,
No. 17CV9325, 2018 WL 3392877 (S.D.N.Y. July 12, 2018)......................................13

*Combier v. Portelos*,
No. 17-CV-2239 (MKB), 2018 WL 3302182 (E.D.N.Y. July 5, 2018) ......................7, 8

*Cryer v. Idaho Dep't of Labor*,
No. 1:16-CV-00526-BLW, 2018 WL 3636529 (D. Idaho July 30, 2018)....................13

*Custom Packaging Supply, Inc. v. Phillips*,
No. 215-CV-04584-ODW, 2015 WL 8334793 (C.D. Cal. Dec. 7, 2015) ....................10

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ...........................................................................................4

*Facebook, Inc. v. ConnectU LLC*,
489 F. Supp. 2d 1087 (N.D. Cal. 2007) ........................................................................11

*Facebook, Inc. v. Power Ventures, Inc.*,
844 F.3d 1058 (9th Cir. 2016) .......................................................................................10

*Facebook, Inc. v. Power Ventures, Inc.*,
No. 08-cv-05780-JW, 2010 WL 3291750 (N.D. Cal. July 20, 2010)...........................10

*Flextronics Int'l, Ltd. v. Parametric Tech. Corp.*,
No. 5:13-CV-00034-PSG, 2014 WL 2213910 (N.D. Cal. May 28, 2014) ...................11

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) .................................................7, 12, 14, 15

*Gonzales v. Uber Techs., Inc.*,
No. 17-cv-02264-JSC, 2018 WL 3068248 (N.D. Cal. June 21, 2018).......................2, 3

*Hansen v. Cal. Dept. of Corrections*,
   920 F. Supp. 1480 (N.D. Cal. 1996) ............................................................14

*Henry Schein, Inc. v. Cook*,
   No. 16-CV-03166-JST, 2017 WL 783617 (N.D. Cal. Mar. 1, 2017) ...........................11

*In re Application for Order Authorizing Pen Register*,
   No. 07-SW-034 GGH, 2007 WL 397129 (E.D. Cal. Feb. 1, 2007) .............................8

*In re Application of U.S. for Order Authorizing Disclosure of Location Information*,
   849 F. Supp. 2d 526 (D. Md. 2011) ...........................................................8

*In re Application of U.S. for Order Authorizing Use of Pen Register*,
   2009 WL 159187 (S.D.N.Y. Jan. 13, 2009) .....................................................8

*In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......................................................11

*In re Facebook Priv. Litig.*,
   791 F. Supp. 2d 705 (N.D. Cal. 2011) .......................................................11

*In re Google Android Consumer Priv. Litig.*,
   No. 11–mc–02264–JSW, 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) .....................11

*In re iPhone App. Litig.*,
   No. 11–md–02250–LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ....................11

*Jennings v. Jennings*,
   736 S.E.2d 242 (S.C. 2012) ..................................................................6

*Lateral Link Grp. Co-Op, LLC v. Turley*,
   No. CV1601096-BRO, 2016 WL 8839014 (C.D. Cal. Feb. 26, 2016)........................10

*Lateral Link Grp., LLC v. Springut*,
   No. CV145695-JAK, 2015 WL 12552055 (C.D. Cal. July 17, 2015)....................10, 11

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)..........................................................................3

*Luviano v. Multi Cable, Inc.*,
   No. CV1505592-BRO, 2016 WL 11220483 (C.D. Cal. Nov. 14, 2016)......................10

*McGill v. Citibank, N.A.*,
   2 Cal. 5th 945 (2017) .....................................................................4, 5

*Meyer v. Capital Alliance, Inc.*,
   No. 15-CV-2405-WVG, 2017 WL 5138316 (S.D. Cal. Nov. 6, 2017) ........................2

*Mintz v. Mark Bartelstein & Assocs. Inc.*,
   906 F. Supp. 2d 1017 (C.D. Cal. 2012) .....................................................11

*Moreno v. San Francisco Bay Area Rapid Transit District*,
   No. 17-cv-02911-JSC, 2017 WL 6387764 (N.D. Cal. Dec. 14, 2017)...........................14

*New Show Studios LLC v. Needle*,
   No. 2:14-CV-01250-CAS, 2014 WL 2988271 (C.D. Cal. June 30, 2014)...................11

*Noel v. Hall*,
   525 F. App'x 633 (9th Cir. 2013) .................................................................................5

*NovelPoster v. Javitch Canfield Grp.*,
   140 F. Supp. 3d 954 (N.D. Cal. 2014) .......................................................................11

*Olivera v. Vizzusi*,
   No. CIV. 2:10–1747 WBS GGH, 2010 WL 4723712 (E.D. Cal. Nov. 15, 2010).........14

*Opperman v. Path, Inc.*,
   87 F. Supp. 3d 1018 (N.D. Cal. 2014) .......................................................................11

*Ortiz v. Los Angeles Police Relief Ass'n*,
   98 Cal. App. 4th 1288 (2002) ....................................................................................14

*Overton v. Uber Techs., Inc.*,
   No. 18-cv-02166-EMC, 2018 WL 3830096 (N.D. Cal. Aug. 8, 2018) ......................3, 4

*Palmieri v. United States*,
   No. 16-5347, 2018 WL 3542634 (D.C. Cir. July 24, 2018) .......................................13

*Perkins v. LinkedIn Corp.*,
   53 F. Supp. 3d 1190 (N.D. Cal. 2014) .......................................................................11

*Pettus v. Cole*,
   49 Cal. App. 4th 402 (1996) ......................................................................................14

*Presley v. United States*,
   No. 17-10182, 2018 WL 3454487 (11th Cir. July 18, 2018).....................................13

*Reichman v. Poshmark, Inc.*,
   267 F. Supp. 3d 1278 (S.D. Cal. 2017)........................................................................2

*Satmodo, LLC v. Whenever Comms., LLC*,
   No. 17-cv-0192-AJB, 2017 WL 1365839 (N.D. Cal. Apr. 14, 2017) .........................11

*Siebert v. Gene Sec. Network, Inc*,
   No. 11-CV-01987-JST, 2013 WL 5645309 (N.D. Cal. Oct. 16, 2013) .......................11

*Sunbelt Rentals, Inc. v. Victor*,
   43 F. Supp. 3d 1026 (N.D. Cal. 2014) .......................................................................10

*Susan S. v. Israels*,
   55 Cal. App. 4th 1290 (1997) ....................................................................................14

*Synopsys, Inc. v. ATopTech, Inc.*,
   No. C 13-CV-02965 SC, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ......................................11

*Theofel v. Farey-Jones*,
   359 F.3d 1066 (9th Cir. 2004) ..........................................................................................5, 6, 7

*Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*,
   315 F. Supp. 3d 1147 (C.D. Cal. 2018) ..............................................................................11

*Top Agent Network, Inc. v. Zillow, Inc.*,
   No. 14-CV-04769-RS, 2015 WL 7709655 (N.D. Cal. Apr. 13, 2015) ....................................10

*Underhill v. Kornblum*,
   No. 16-CV-1598-AJB, 2017 WL 2869734 (S.D. Cal. Mar. 16, 2017) ...................................10

*United States v. Nosal*,
   676 F.3d 854 (9th Cir. 2012) .......................................................................................10, 11

*Videckis v. Pepperdine Univ.*,
   100 F. Supp. 3d 927 (C.D. Cal. 2015) ..............................................................................14

*Walker v. City of Los Angeles*,
   No. CV 09–3857 GAF (PLAx), 2010 WL 11515308 (C.D. Cal. Jan. 26, 2010)..........................14

*Yee v. Lin*,
   No. C 12–02474 WHA, 2012 WL 4343778 (N.D. Cal. Sept. 20, 2012) .....................................9

*Yee v. Lin*,
   No. C 12-02474 WHA, 2012 WL 5372395 (N.D. Cal. Oct. 30, 2012) ......................................9

**Statutes**

18 U.S.C. § 2510(12)(C)...............................................................................................8

18 U.S.C. § 2510(15) ...................................................................................................7

18 U.S.C. § 2510(17)(B) ...............................................................................................6

18 U.S.C. § 2701(a) .....................................................................................................7

**Other Authorities**

Orin Kerr, A User's Guide to the Stored Communications Act,
   72 Geo. Wash. L. Rev. 1208 (2004) ..........................................................................1, 5, 7, 8

*Oxford English Dictionary*................................................................................................6

**INTRODUCTION**

This is Plaintiff's third attempt to state a claim, but it suffers from the same defects that doomed his earlier complaints. Instead of fixing those defects, Plaintiff bases this third attempt almost entirely on a strained interpretation of *Carpenter*, a case the Supreme Court cautioned should not be applied beyond its limited facts. His opposition often fails to respond to Uber's arguments at all, and rarely cites any support for Plaintiff's own position. The Court should dismiss the complaint.

First, Plaintiff makes almost no effort to defend his UCL claims. He ignores the fact, and this Court's prior holding, that he is seeking "classic money damages," not restitution. Beyond that, he has not plausibly alleged he was damaged at all, under either his original theory or his new one, which describes a claim that is at best *de minimis*. Plaintiff devotes much more space to a half-hearted argument for injunctive relief, but cannot overcome the fact that he was unwilling to allege an intent to drive for Lyft in the future. Alleging only that he "may" do so is not enough.

Second, the Stored Communications Act claim fails because Plaintiff has not alleged facts showing that Uber accessed communications while they were being stored "for purposes of backup protection," because he does not allege Lyft was providing an "electronic communications service," and because of the "tracking device" exception to the Act. The SCA does not apply.

Third, Plaintiff's argument in support of his CDAFA claim that he "owned" the geolocation data makes little sense. That claim would also fail because the Ninth Circuit has held CDAFA and similar "anti-hacking" statutes must be construed narrowly, which most courts have held to mean a plaintiff must show the defendant "circumvented technical or code-based barriers" put up to restrict or bar its access. Plaintiff has not alleged that here. And for the same reasons he did not allege economic harm for UCL purposes, he has failed to allege any "damage or loss" under CDAFA.

Finally, though Plaintiff's introduction focuses exclusively on *Carpenter*, his actual argument on that score is anticlimactic. He offers no support for his claim that *Carpenter*, which involved applying the Fourth Amendment in a criminal case, has radically changed the landscape of privacy law in *civil* cases. And even if it had, Plaintiff's implausible allegations here do not approach the sort of egregious violation of social norms required to state a claim under the California constitution. Because Plaintiff's third effort also fails, the Court should dismiss his complaint with prejudice.

# ARGUMENT

## I. The UCL claims should be dismissed.

### A. Plaintiff hardly bothers to defend his allegations of economic harm.

Plaintiff devotes only two paragraphs to the claim he "lost money or property" for purposes of the UCL. He first cites *Korea Supply* and insists he has a right to restitution. Opp. at 6:12–18. But Plaintiff does not even argue he is *seeking* restitution. First, he argues that Uber's alleged use of geolocation data to "depress the availability of Lyft's services" meant Lyft riders had to wait longer, and as a result some of them canceled rides. Opp. at 6:19–20, 22–24. But the Court has already rejected this argument, recognizing that it is a "classic money damages" claim alleging a "lost profit opportunity," not a claim for restitution. *Gonzales v. Uber Techs., Inc.*, No. 17-cv-02264-JSC, 2018 WL 3068248, at *3 (N.D. Cal. June 21, 2018). Plaintiff simply does not address that issue.

The second argument is partly new, but no more successful. Plaintiff now says that as a result of the "depressed availability of Lyft's services," he was "forced to spend additional money (in the form of car depreciation of [*sic*] gas costs) and time chasing fares." Opp. at 6:20–22 (citing SAC ¶¶ 153–55). This is still a damages claim, not one for restitution. But the argument fails for other important reasons as well. For one thing, it shows just how trivial Plaintiff's case is. "Although the bar is not high, trivial [or] de minimis" injuries still do not state a UCL claim. *Meyer v. Capital Alliance, Inc.*, No. 15-CV-2405-WVG, 2017 WL 5138316, at *2 (S.D. Cal. Nov. 6, 2017) (dismissing claims alleging junk faxes caused plaintiffs to incur unspecified amount of "ink and paper" costs). Plaintiff's unquantified claims for car depreciation or gas consumption incurred while he drove a few blocks toward a rider who then canceled fall squarely into that category. And the UCL provides for restitution of lost money or property—not wasted time. *Reichman v. Poshmark, Inc.*, 267 F. Supp. 3d 1278, 1287 (S.D. Cal. 2017).

Further, the theory is not just implausible, it is contrary to Plaintiff's own allegations. His case is based on the premise that Uber wanted to learn which drivers were using both the Lyft and Uber apps so it could try to entice those "dual-app" drivers to use the Uber app exclusively. SAC ¶ 10. Plaintiff alleges—still without pleading concrete facts—that Uber succeeded, thus reducing the overall supply of Lyft drivers and forcing Lyft customers to wait longer. *Id*. Plaintiff now argues that

the extended wait caused "his" customers to cancel while he was *en route*, so he burned fuel and his car depreciated for nothing. *Id*. ¶ 126. But Plaintiff himself alleges that as soon as a potential rider opens the Lyft app, "[t]he locations of nearby Lyft drivers are displayed …, along with the estimated price and wait time…." *Id*. ¶ 3. If a potential rider knows what to expect before ever making a ride request, then it is not clear how Plaintiff could have been injured in the way he now claims. A rider who didn't want to wait would presumably just choose another option; a rider who did make a request despite the projected wait would be unlikely to cancel for that reason. Even under Plaintiff's theory, therefore, he still would have been far more likely to receive ride requests only from potential riders who knew he was nearby, making his "accelerated depreciation" theory implausible.

Beyond that, Plaintiff has not responded to Uber's point that his theory is speculative in any event because a particular cancellation, if any, might have happened for any number of reasons other than a shortage of nearby Lyft drivers, nor does he defend the "Prime Time"/surge-pricing theory he alleged in the SAC. For those reasons, too, he has again failed to allege a claim for economic harm.

### B.    Plaintiff does not adequately allege a claim for injunctive relief.

Instead, Plaintiff devotes most of his UCL argument to the contention that he can seek injunctive relief, but that too fails. Standing to seek injunctive relief requires a showing of concrete and particularized harm that is either actual or imminent. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see Overton v. Uber Techs., Inc.*, No. 18-cv-02166-EMC, 2018 WL 3830096, at *6, 9–10 (N.D. Cal. Aug. 8, 2018) (holding plaintiff drivers had not plausibly alleged threat of imminent harm justifying injunctive relief against either the CPUC or Uber). Plaintiff has not alleged that here.

First, Plaintiff essentially concedes he cannot show a real threat of future harm as a result of the alleged retention of data showing his location four years in the *past.* That was one reason this Court dismissed previously (*Gonzales*, 2018 WL 3068248, at *2), and Uber renewed the argument here (Mot. at 7:3–7). Plaintiff now makes only conclusory assertions like "Uber's illegal business practices continually harm Plaintiff; therefore, injunctive relief is proper," or vaguely asserts that the four-year-old geolocation data "includes historic[al] data that invades Plaintiff's personal life" today or could somehow provide Uber with his *financial* information—something he did not allege in the SAC. Opp. at 3:4–5, 4:15–27. None of this plausibly alleges imminent future injury.

Second, Plaintiff insists he has adequately alleged future injury due to the risk Uber might start collecting data again, but never explains why it is enough for him to allege only that he "may work for Lyft in the future." *See* Opp. at 5:6–6:11 (relying on *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018)). He says that without injunctive relief he would be "unable to rely" on representations that the alleged practice has ceased, and so "is thereby prohibited from driving for Lyft again for fear of the same alleged business practice." *Id*. at 5:15–22. Even less credibly, he suggests that because of the uncertainty, he "will continue to suffer, including in deciding whether or not to drive for Lyft again." *Id*. at 6:1–3. But both arguments fail for lack of any allegation that Plaintiff actually has any *desire* to "drive for Lyft again." He did not allege that, and has not even tried to distinguish the cases showing that plaintiffs who are still "thinking it over," as he claims to be, do not have standing to seek injunctive relief. *See* Mot. at 7:8–13 (citing *Lanovaz v. Twinings N. Am.*, 726 F. App'x 590 (9th Cir. June 6, 2018) and *Rugg v. Johnson & Johnson*, 2018 WL 3023493, at *7 (N.D. Cal. June 18, 2018)); *see also Overton* at *6, 10 (finding alleged fear of future harm did not confer standing partly because drivers were not compelled to work for Uber). As Uber also showed, even an allegation of intent would not have been enough, in and of itself, to confer standing. Mot. at 7:14–8:2. But Plaintiff was not willing to allege even that.

Finally, Plaintiff also appears to be suggesting his own standing doesn't matter because he can seek "public injunctive relief" on behalf of "the general public." *See* Opp. at 3:4–4:8. That isn't true. Before 2004, the UCL did authorize "any person" to file an action on behalf of "the general public." *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 228 (2006). But the voters changed that because they believed it had encouraged "frivolous lawsuits as a means of generating attorneys' fees without generating a corresponding public benefit…." *Id*. (quoting Prop. 64, § 1(b)). In his opposition, Plaintiff cites half a dozen *pre*-2004 cases and then a single 2017 case dealing with "public injunctive relief." *See* Opp. at 3:7–22 (citing *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017)). But if Plaintiff is suggesting *McGill* somehow revived actions on behalf of the "general public," he is wrong. *McGill* held only that a provision in a predispute arbitration agreement waiving the right to "seek public injunctive relief in any forum" is unenforceable. 2 Cal. 5th at 951–52, 956. Citibank argued Prop 64 eliminated the right to seek public injunctive relief

entirely, an argument the Court rejected. *Id*. at 958–59. That is still available under the UCL—as long as the plaintiff has standing. *Id*. Here, Plaintiff does *not* have standing. Further, Plaintiff is not actually *seeking* "public injunctive relief"—he is seeking an injunction that would benefit, at most, a class of future Lyft drivers. But "[r]elief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—*or to a group of individuals similarly situated to the plaintiff*—does not constitute public injunctive relief." *McGill* at 955 (emphasis added). *McGill* thus has nothing to do with this case. In short, Plaintiff again has alleged no basis for a UCL claim.

## II.     The Stored Communications Act claim also fails.

### A.     Plaintiff's "backup protection" argument makes little sense.

Plaintiff contends that Uber accessed his communications while they were being stored by Lyft "for purposes of backup protection" because the Ninth Circuit has construed "electronic storage" broadly, and so the Court should find in Plaintiff's favor. Opp. at 8:5–9:24 (repeatedly citing *Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004)). But Plaintiff does not explain how the facts he alleged fall within even a broad construction of the term, and he does not analyze *Theofel* or cite any other case law supporting his view. His arguments fail.

Plaintiff argues that "the Lyft servers constantly [took] Plaintiff's location data and back[ed] up [his] location every few seconds for the purposes of access of the data for fare calculation, government subpoenas, insurance purposes, and other uses." Opp. at 8:12–14 (citing SAC ¶¶ 58, 133–34). But that argument defeats itself: it asserts Lyft was storing his data for *those* specific purposes, not "for purposes of backup protection." The Ninth Circuit held in *Noel* that a defendant who stored communications for his own use was not doing so "as part of any 'backup protection' incident to providing communications service." *Noel v. Hall*, 525 F. App'x 633 (9th Cir. 2013). Plaintiff's efforts to distinguish *Noel*, mostly by citing other unrelated decisions in the litigation between those parties, are not convincing. *See* Opp. 9:10–21 & n.6. But beyond that, Plaintiff has not cited a single case affirmatively supporting his position. Plaintiff offers no support for the idea that data stored for the business purposes he cites is being stored "for purposes of backup protection."

Further, as Uber pointed out, *Theofel* itself recognizes that there have to be at least two copies of something for one to be stored "for purposes of backup protection." *See* Mot. at 8:25–9:15.

The plain meaning of the word "backup" itself "necessarily presupposes the existence of another copy…." *Jennings v. Jennings*, 736 S.E.2d 242, 245 (S.C. 2012); *see Oxford English Dictionary*, "Backup" ("A stand-by, reserve…. [I]n computing, (the making of) a duplicate copy of a disc, file, etc., for use in case of loss or corruption of the original"). But the phrase Congress actually used strengthens the argument further. The SCA does not simply say "backup," nor does it say "backup purposes"; it says "for purposes of backup *protection*." 18 U.S.C. § 2510(17(B) (emphasis added). Again, this presupposes the existence of another copy, and one that the backup is intended to protect.

Plaintiff responds by claiming he "plausibly alleges that the data that the Plaintiff provides to Lyft are immediately sent to Lyft riders, therefore there are at least two copies of the data. A copy sent to Lyft riders and a copy stored on Lyft servers for purposes listed previously." Opp. at 8:15–17. Plaintiff does *not* in fact allege that all the data he provided to Lyft was "immediately sent to Lyft riders" (*see* SAC ¶¶ 11, 58, 74, 78–81, 133–34), but assuming he means only his Lyft ID and geolocation data, the argument still fails. Again, like almost all SCA cases, *Theofel* involved email messages, not exchanges of (anonymized) geolocation data. While the court held that copies of emails retained on a server after the recipient opened them could be considered "backups" *if* the recipient had downloaded personal copies, that would only be true as long as both copies existed:

> [T]he lifespan of a backup is necessarily tied to that of the underlying message. Where the underlying message has expired in the normal course, any copy is no longer performing any backup function. An ISP that kept permanent copies of temporary messages could not fairly be described as "backing up" those messages.

*Theofel*, 359 F.3d at 1076. That's what Plaintiff is arguing here: that Lyft was keeping permanent copies of temporary "messages" for some specific use in the ordinary course of business. Under *Theofel*, that does not qualify as storing them "for purposes of backup protection."

Reinforcing that conclusion, the defendant must have accessed the data *while* it was being stored for purposes of backup protection. In *Cobra Pipeline*, for example, the court held that even if the copies in question (allegedly including driver names and location data) were being stored for backup purposes, the defendant did not violate the SCA because it did not access the backup copies. Rather, it "accessed the primary means for accessing the data, the user-facing web portal. Any data viewed through that portal was not being kept as a back-up." *Cobra Pipeline Co. v. Gas Nat., Inc.*,

UBER'S REPLY ISO MOTION TO DISMISS SAC
3:17-cv-02264-JSC

132 F. Supp. 3d 945, 952 (N.D. Ohio 2015). Here too, Plaintiff does not allege Uber accessed the hypothetical Lyft backup copy itself, only that Uber collected data via Lyft user accounts it created. *See, e.g.*, SAC ¶ 52 at p. 11:20–12:10 (quoting article alleging that Uber "created fake Lyft rider accounts" and collected data sent to them). That does not violate the Stored Communications Act.

Plaintiff has two responses. First, he strongly implies *Cobra Pipeline* is inconsistent with *Theofel*. Opp. at 9:2–3, 7–9. To the contrary, while the court noted (as have others) that *Theofel*'s analysis is problematic, that did not affect its decision because "[e]ven under the Ninth Circuit's broad approach in *Theofel*, the storage must be a secondary copy, kept for the 'purposes of backup.' Here, the Defendants did not access any backup copy. Instead, they accessed the main … website." 132 F. Supp. 3d at 951. Even if that was not legitimate, it did not violate the SCA. *Id*. The two cases are therefore consistent. Second, Plaintiff argues that here, he alleges "the accessed communications were continuously stored in a server every few seconds," and he claims "[i]t is intuitive that … data stored every few seconds is primarily stored for backup purposes." Opp. at 9:4–7. But that simply does not follow. Data stored periodically could be stored for any purpose, and would not necessarily be "for purposes of backup protection." In any event, again Plaintiff does not allege Uber accessed the stored "backup" copy, only that it was collecting some of the same information via its own Lyft rider accounts. That does not allege a violation of the SCA. *See also Combier v. Portelos*, No. 17-CV-2239 (MKB), 2018 WL 3302182, at *12 (E.D.N.Y. July 5, 2018) (applying same rationale).

**B.      Plaintiff does not allege Lyft acts as an "electronic communication service."**

Plaintiff devotes just one paragraph to arguing he has alleged Lyft provides an "electronic communication service" as required for the SCA to apply. Opp. at 10:1–12; *see* 18 U.S.C. § 2701(a); 18 U.S.C. § 2510(15). He first seeks to avoid the issue by arguing that the Court has already decided it. But the Court did not hold that Lyft provides an electronic communication service, or squarely address whether Plaintiff's complaint sufficiently alleged that requirement; it held only that Uber had not met its burden for purposes of that motion to dismiss. *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1088 (N.D. Cal. 2018). On the substantive point, Plaintiff offers no argument at all, asserting only that the facts here are "overtly distinguishable" from those in the cases Uber cited. Opp. at 10:9–11. Of course Lyft is not selling exactly the same service as the businesses in those

cases. *See* Mot. at 10–11. But like them, Lyft communicates with potential customers over the internet to arrange transactions. That does not turn a business into an "electronic communication service" provider for SCA purposes. *See id.* (citing cases); *see also* Orin Kerr, A User's Guide to the Stored Communications Act, 72 Geo. Wash. L. Rev. 1208, 1230 & n.148 (2004).

As one court recently pointed out, citing many of the same cases Uber did, "[g]enerally the definition of 'electronic communication service' is limited to Internet service providers ('ISPs'), that is, telecommunication companies that carry Internet traffic and electronic bulletin boards." *Combier*, 2018 WL 3302182, at *12. "Even operators of commercial websites that have email capabilities that enable their operators to communicate with their customers have repeatedly been found not to constitute electronic communication services." *Id.* (citing cases). For the same reasons, Plaintiff has failed to allege here that Lyft provides the sort of service that the SCA was intended to cover.

### C.     The "tracking device" exception would also defeat Plaintiff's claim here.

Finally, covered "electronic communications" do not include "any communication from a tracking device…." 18 U.S.C. § 2510(12)(C). Plaintiff "disagrees that the Lyft driver app on a cell phone constitutes a 'tracking device….'" Opp. at 10:13–21. But most courts have agreed that the SCA does not apply for this reason to cases involving geolocation data sent from a cell phone. *See, e.g.*, *In re Application of U.S. for Order Authorizing Disclosure of Location Information*, 849 F. Supp. 2d 526, 577 (D. Md. 2011) (collecting cases); *In re Application of U.S. for Order Authorizing Use of Pen Register*, 2009 WL 159187, *3–5 (S.D.N.Y. Jan. 13, 2009) (same). Plaintiff's authorities are not to the contrary. Opp. at 10:13–21 (citing *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1042–43 (N.D. Cal. 2014) and *In re Application for Order Authorizing Pen Register*, No. 07-SW-034 GGH, 2007 WL 397129, at *2 (E.D. Cal. Feb. 1, 2007). *Backhaut* involved text messages, not location data; and *Pen Register* did not involve the SCA. For this reason, too, the SCA claim fails.

### III.     The California Data Access and Fraud Act claim fails.

### A.     Plaintiff alleges no facts showing he "owned" his Lyft ID or geolocation data.

Plaintiff now argues he has alleged he "owns the data at issue," pointing to four paragraphs in the SAC. Opp. at 10:27–12:21 (citing SAC ¶¶ 5, 54, 135, 143). But those allegations are at best conclusory. For that matter, one of the cited paragraphs says nothing about data, alleging only that

Uber "access[ed] computer systems, including servers and smartphones, owned and operated by Plaintiff, Class Members, and Lyft." SAC ¶ 54. No one disputes that Plaintiff owned a smartphone, but Plaintiff has never alleged facts showing Uber *accessed* it. To the extent he alleges "access" to any computer or system, it is one belonging to *Lyft*. *See* SAC ¶¶ 52; 60, 93, 114, 140.

As for the data claim, Plaintiff does not clarify what data Plaintiff claims he owned for CDAFA purposes or why he believes he owned it. He cites only general and conclusory allegations referring to "personal data" or "personal information … owned by each individual respectively…." SAC ¶¶ 5, 135, 143. The closest Plaintiff comes to an explanation is to assert, with no support, that "[o]wnership may be had over automatically generated location data just as it may be had over emails, photos, and computer programs, *inter alia*…." Opp. at 11:19–20. He says this is just "common sense." *Id*. at 11:21–22. But while someone might have a *privacy* interest in her location, or might own property on which she happens to be located, it makes no sense to say a person retains an "ownership interest" in automatically generated location data itself.

Other types of data certainly could be owned, like truly personal data someone created, or business information like trade secrets. That was the type of data allegedly at issue in *Yee*, which held a plaintiff had adequately alleged he "own[ed] the data contained in his email accounts." *Yee v. Lin*, No. C 12–02474 WHA, 2012 WL 4343778, at *3 (N.D. Cal. Sept. 20, 2012). But there, the plaintiff alleged the data had significant independent business value (*id*. at *2, 4) and that some of it was subject to attorney-client privilege. *Id*. at *1, 3; *see Yee v. Lin*, No. C 12-02474 WHA, 2012 WL 5372395, at *2 (N.D. Cal. Oct. 30, 2012) (discussing amended complaint in which plaintiff provided more detail). While *Yee* did not analyze the CDAFA ownership issue, it did not involve anything like ownership of automatically generated data provided to a third party. It involved the allegedly valuable contents of personal email.

Nor does Plaintiff show that he, as opposed to Lyft, would be considered the "owner" of the geolocation data. (Not surprisingly, Plaintiff does not argue he owned his Lyft ID number.) He relies entirely on the argument that Lyft's terms of service "dictate" that "Plaintiff's information belongs to Plaintiff and is [only] licensed to Lyft." Opp. at 12:5–10. But again the SAC contains only the most conclusory allegations in this regard, and Plaintiff fails to explain how those allegations are

sufficient. Contrary to Plaintiff's claim, Uber did not concede Lyft's TOS gave him a full ownership interest—it argued the contrary—and it is his burden at the pleading stage to allege facts supporting a plausible claim of ownership. In similar contexts, the Ninth Circuit has held that private terms of service cannot dictate the scope of liability under statutes like CDAFA. *See Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1066–67 (9th Cir. 2016) (holding that without more, a violation of a website TOS cannot establish liability under CFAA or CDAFA; citing *United States v. Nosal*, 676 F.3d 854, 862–63 (9th Cir. 2012) (same as to CFAA)). The same is true here.

Thus, Plaintiff has neither alleged nor convincingly argued that he "owned" the data he says was critical to Uber's program—his Lyft ID and geolocation data. And he has not alleged or argued that Uber "accessed" any of his more personal information, only that it could hypothetically derive that information from the data it got from Lyft. This alone defeats his CDAFA claim.

### B. Plaintiff fails to allege Uber "circumvented technical or code-based barriers."

*Power Ventures* and *Nosal* also dispose of Plaintiff's allegation that Uber's access was "without permission" because it violated Lyft's terms of service—a point Plaintiff does not meaningfully contest. *See* Mot. at 14:26–15:5; Opp. at 13:11–15. Plaintiff contends, rather, that the Court should follow the line of cases that have held CDAFA can be violated without a showing that the defendant "circumvented technical or code-based barriers" that were put up to restrict or bar its access. Opp. at 12:24–13:10. But that is the minority view, and is inconsistent with the Ninth Circuit's direction that statutes like CDAFA and CFAA should be construed narrowly.

The "technical or code-based barriers" language originates, in fact, from an earlier district court decision in *Power Ventures* itself. *Facebook, Inc. v. Power Ventures, Inc.*, No. 08-cv-05780-JW, 2010 WL 3291750, at *11 (N.D. Cal. July 20, 2010). Since that case was decided, most district courts in California have applied it when considering CDAFA claims (generally dismissing them as a result).[1] Only a handful of courts have considered and rejected the test.[2] Other cases (including

---

[1] *Underhill v. Kornblum*, No. 16-CV-1598-AJB, 2017 WL 2869734, at *5 (S.D. Cal. Mar. 16, 2017); *Luviano v. Multi Cable, Inc.*, No. CV1505592-BRO, 2016 WL 11220483, at *5 (C.D. Cal. Nov. 14, 2016); *Lateral Link Grp. Co-Op, LLC v. Turley*, No. CV1601096-BRO, 2016 WL 8839014, at *10 (C.D. Cal. Feb. 26, 2016); *Custom Packaging Supply, Inc. v. Phillips*, No. 215-CV-04584-ODW, 2015 WL 8334793, at *3 (C.D. Cal. Dec. 7, 2015); *Lateral Link Grp., LLC v. Springut*, No. CV145695-JAK, 2015 WL 12552055, at *2 (C.D. Cal. July 17, 2015); *Top Agent Network, Inc. v. Zillow, Inc.*, No. 14-CV-04769-RS, 2015 WL 7709655, at *6 (N.D. Cal. Apr. 13, 2015); *Sunbelt*

four that Plaintiff cites), either failed to consider the test or addressed it only in *dicta*.[3] The majority

view, therefore, is that CDAFA can be violated only under these narrow circumstances.

But more than a simple headcount supports the test. The majority rule is consistent with the

Ninth Circuit holdings that the relevant statutes should be construed narrowly, not broadly, which is

reflected in the fact that many of the majority cases (after 2012) cite *Nosal* in support. *See, e.g.*,

*Lateral Link Group*, 2015 WL 12552055, at *2. The majority rule is also consistent with the fact that

these are primarily anti-hacking statutes, and though Plaintiff has used technical words like "hack"

or "spyware," he has never alleged facts supporting those claims. He alleges that Uber created Lyft

rider accounts—something anyone can do—and then collected data sent to those accounts. That does

not allege Uber "circumvented" any technical or code-based barrier Lyft put up in order to keep

Uber out, and so does not allege a violation of CDAFA.

**C.   Plaintiff has not plausibly alleged economic harm of any kind.**

The CDAFA claim also fails because, as discussed above, Plaintiff's allegations describe at

best *de minimis* harm. Opp. at 14:8–12; *see also* Opp. to Mot. to Dismiss FAC (Doc. 41) at 21:6-8

(equating damages claims under CDAFA and UCL). Even assuming the statute allows compensatory

damages beyond those caused by a "hack," Plaintiff has not plausibly alleged any damages claim not

based on speculation. The opposition devotes little more than a sentence to the argument in the

CDAFA section, and points to no new facts supporting this old theory. And as shown above, his new

---

*Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1033 (N.D. Cal. 2014); *New Show Studios LLC v. Needle*, No. 2:14-CV-01250-CAS, 2014 WL 2988271, at *7 (C.D. Cal. June 30, 2014); *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1217 (N.D. Cal. 2014); *Flextronics Int'l, Ltd. v. Parametric Tech. Corp.*, No. 5:13-CV-00034-PSG, 2014 WL 2213910, at *4 (N.D. Cal. May 28, 2014); *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1053–54 (N.D. Cal. 2014); *Siebert v. Gene Sec. Network, Inc*, No. 11-CV-01987-JST, 2013 WL 5645309, at *11 (N.D. Cal. Oct. 16, 2013); *In re Google Android Priv. Litig.*, No. 11–mc–02264–JSW, 2013 WL 1283236, at *11–12 (N.D. Cal. Mar. 26, 2013); *In re iPhone App. Litig.*, No. 11–md–02250–LHK, 2011 WL 4403963, at *12–13 (N.D. Cal. Sept. 20, 2011); *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 715 (N.D. Cal. 2011).

[2] *Henry Schein, Inc. v. Cook*, No. 16-CV-03166-JST, 2017 WL 783617, at *5 (N.D. Cal. Mar. 1, 2017); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1098–99 (N.D. Cal. 2015); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 954, 965 (N.D. Cal. 2014).

[3] *Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*, 315 F. Supp. 3d 1147 (C.D. Cal. 2018); *Satmodo, LLC v. Whenever Comms., LLC*, No. 17-cv-0192-AJB, 2017 WL 1365839, at *5–6 (N.D. Cal. Apr. 14, 2017); *Synopsys, Inc. v. ATopTech, Inc.*, No. C 13-CV-02965 SC, 2013 WL 5770542, at *11 (N.D. Cal. Oct. 24, 2013); *Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 3d 1017, 1032 (C.D. Cal. 2012); *Facebook, Inc. v. ConnectU LLC*, 489 F. Supp. 2d 1087, 1091 (N.D. Cal. 2007).

theory that he might have suffered damages due to "chasing fares" is at best implausible. The Court should dismiss for that reason as well.

## IV.   *Carpenter*'s narrow Fourth Amendment holding does not save Plaintiff's case.

Finally, Plaintiff's attempt to use *Carpenter* to breathe new life into his state-law privacy claim also fails. The Supreme Court expressly held that *Carpenter* was limited to its facts. *See Carpenter v. United States*, 138 S. Ct. 2206 (2018). It does not change the result here.

### A.   Plaintiff has not adequately alleged a legally protected privacy interest.

The Court previously held that Plaintiff had pleaded, at least in the abstract, a protected privacy interest in home addresses and "arguably precise geolocation data." *Gonzales*, 305 F. Supp. 3d at 1091. But contrary to Plaintiff's argument, the Court did *not* hold that was enough to establish this element of the claim. The Court went on, in fact, to note that Plaintiff had offered no authority to show a protected privacy interest in information like a Lyft ID number, the details of a driver's work for Lyft, or a driver's name, and it concluded that no such privacy interest exists. *Id.* The Lyft ID number in particular is a fundamental component of Plaintiff's theory of the case. *See, e.g.*, SAC ¶¶ 52 at 12:4–10; 74; 170–71. And as to home addresses and geolocation data, while that information could hypothetically implicate a protected privacy interest, it could only do so if it were linked to a particular individual. Here, the information Plaintiff alleges Uber collected was anonymized. Plaintiff contends that Uber "*could* have obtained" home addresses, not that it actually did so (305 F. Supp. 3d at 1092 (emphasis added)), and the same is true of his contention that it could have compiled vast databases of geolocation data, thus identifying individuals. Without more, Plaintiff still has not alleged a legally protected privacy interest sufficient to state a claim.

### B.   *Carpenter* does not give Plaintiff a reasonable expectation of privacy in his geolocation data under the circumstances.

This Court previously held that Plaintiff had not alleged a reasonable expectation of privacy in the data Uber supposedly collected—even his home address or geolocation data. 305 F. Supp. 3d at 1092. Plaintiff's argument that *Carpenter* should change this reflects a fundamental misreading of the case. Plaintiff argues *Carpenter* abrogated the long-standing third-party doctrine for all purposes,

as long as cell-site location information is involved. Opp. at 16:4–18:23. But we know the Supreme Court did not do that, because it *said* so:

> Our decision today is a narrow one. We do not express a view on matters not before us: real-time CSLI or "tower dumps" (a download of information on all the devices that connected to a particular cell site during a particular interval). **We do not disturb the application of *Smith* and *Miller*** or call into question conventional surveillance techniques and tools, such as security cameras. Nor do we address other business records that might incidentally reveal location information.

*Id.* at 2220 (emphasis added). The Court addressed only the Fourth Amendment and only government surveillance. Because it did not "disturb the application of *Smith* and *Miller*" at all, it remains binding law that in circumstances other than those in *Carpenter*, there is no reasonable expectation of privacy in records voluntarily turned over to a third party—including cell-site data.

Not surprisingly, Plaintiff cites no support for his position. Although *Carpenter* was recently decided, courts have applied it narrowly in accordance with the Supreme Court's instructions. *See, e.g.*, *Cryer v. Idaho Dep't of Labor*, No. 1:16-CV-00526-BLW, 2018 WL 3636529, at *1 n.1 (D. Idaho July 30, 2018); *Palmieri v. United States*, No. 16-5347, 2018 WL 3542634, at *6 (D.C. Cir. July 24, 2018); *Presley v. United States*, No. 17-10182, 2018 WL 3454487, at *4–5 (11th Cir. July 18, 2018); *Cohen v. Casper Sleep Inc.*, No. 17CV9325, 2018 WL 3392877, at *4 (S.D.N.Y. July 12, 2018). Where *Carpenter* has been considered in civil cases, it has not made a difference. *See Cryer* at *1 n.1 (declining to reconsider decision dismissing state constitutional privacy claim based on IP addresses and cell numbers because of *Carpenter*); *Cohen* at *4 (holding that allegations were "disturbing," but *Carpenter* did not change consent barred the claims). The same should be true here.

And again, even if *Carpenter* applied in cases like this one, the facts are not the same. That case involved government tracking—without knowledge or consent—of "the whole of [one's] physical movements," not just on public streets but "*beyond public thoroughfares* and into private residences, doctor's offices, political headquarters, and other potentially revealing locales...." 138 S. Ct. at 2218 (emphasis added). Plaintiff here allege that Uber tracked Lyft driver IDs *while they were driving* so it could match those IDs with drivers known to be using the Uber app, so it could offer them incentives to drive with Uber only. Plaintiff has never explained, much less plausibly, why Uber would be interested in tracking him at any other time. Notably, Plaintiff does not respond now

1   to Uber's point that he misquoted Lyft's privacy policy when he claimed the Lyft app tracked him

2   when it was off. *See* Mot. at 22:12–26. Even if *Carpenter* applied here, therefore, Plaintiff would

3   still not have stated a claim because he has not alleged the facts necessary to invoke it.

4          **C.      Plaintiff's claim here still fails because he has not alleged a violation sufficiently**

5                  **"serious" to violate the state constitution.**

6          Finally, even if Plaintiff established the other two elements of the state constitutional claim,

7   he still has not alleged a sufficiently serious violation of privacy in order to establish the third.

8   Despite his emphasis on *Carpenter*, Plaintiff musters only a single paragraph to try to convince the

9   Court that the facts he alleged describe an "egregious breach of social norms." Opp. at 19:6–21. He

10  falls far short of the mark.

11         As this Court noted, "[e]ven disclosure of very personal information" has been deemed

12  insufficient to meet the high standard required by state law. *Gonzales*, 305 F. Supp. 3d at 1092

13  (citing cases); *see also Moreno v. San Francisco Bay Area Rapid Transit District*, No. 17-cv-02911-

14  JSC, 2017 WL 6387764, at *8 (N.D. Cal. Dec. 14, 2017) (holding routine collection of anonymous

15  client ID and location insufficient). Conversely, those cases where an alleged invasion of privacy

16  *was* found sufficiently serious show that Plaintiff's allegations here pale by comparison. *See, e.g.*,

17  *Videckis v. Pepperdine Univ.*, 100 F. Supp. 3d 927, 934 (C.D. Cal. 2015) (coach and other officials

18  routinely pried into details of students' sexual and personal lives); *Olivera v. Vizzusi*, No. CIV. 2:10–

19  1747 WBS GGH, 2010 WL 4723712, at *1 (E.D. Cal. Nov. 15, 2010) (disclosure of officers'

20  personnel records including allegations of misconduct and other personal information); *Walker v.

21  City of Los Angeles*, No. CV 09–3857 GAF (PLAx), 2010 WL 11515308, at *6 (C.D. Cal. Jan. 26,

22  2010) (plaintiff's supervisor disclosed his medical condition to coworkers); *Ortiz v. Los Angeles

23  Police Relief Ass'n*, 98 Cal. App. 4th 1288, 1307 (2002) (disclosure threatened not only employment

24  but plaintiff's right to marry her chosen partner); *Susan S. v. Israels*, 55 Cal. App. 4th 1290, 1299

25  (1997) (dissemination of plaintiff's mental-health records containing highly sensitive and

26  embarrassing information); *Pettus v. Cole*, 49 Cal. App. 4th 402, 445 (1996) (disclosure of detailed

27  and highly embarrassing medical and personal information to employer); *Hansen v. Cal. Dept. of*

28

*Corrections*, 920 F. Supp. 1480, 1506 (N.D. Cal. 1996) (refusal to allow privacy for bodily functions).

Plaintiff recognizes the high standard requires something similar to the allegations in these cases, judging by his comparison of the "'unblinking' technology" by Uber to making a video recording of employees in a locker room without their knowledge. Opp. at 19:12–13. But he has not alleged that anything like that actually happened to him, or to any Lyft driver. Again, he does not allege the same kind of facts at issue in *Carpenter*, but that still would not rise to the level of a state constitutional violation—nor should a federal court be the first to make such a determination.

That is especially true since, as this Court previously held, even if Plaintiff's allegations that Uber obtained his name and home address were plausible, "[w]ithout more allegations as to what, if anything, Uber did with this information, Plaintiff has not plausibly alleged a serious invasion of privacy." 305 F. Supp. 3d at 1093. The SAC did not include those allegations, and Plaintiff essentially concedes he cannot allege the necessary facts; he argues only that they do not matter. Opp. at 19:17–19. But as the Court recognized, without such allegations, he has not stated a claim.

## CONCLUSION

Plaintiff's most recent pleading is still an online article posing as a complaint, and his opposition shows that he is still searching for factual and legal theories that fit. He has not found any, despite having had three opportunities to plead his case. The SAC is a last-ditch, misguided effort to take advantage of an inapplicable Supreme Court decision. That effort fails. Because Plaintiff's SAC still does not state a claim, the Court should dismiss the case with prejudice.

Dated: August 22, 2018                         Respectfully Submitted,

                                               SHOOK, HARDY & BACON L.L.P.


                                               By: */s/ M. Kevin Underhill*
                                                       M. KEVIN UNDERHILL
                                                       ELIZABETH A. LEE

                                               Attorneys for Defendants
                                               UBER TECHNOLOGIES, INC.; UBER USA,
                                               LLC; and RASIER-CA